Filed 5/21/13 P. v. Frazier CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SEMAJ LEON FRAZIER,<br><br>    Defendant and Appellant. | F063437<br><br>(Super. Ct. No. 11CM1628)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Harry Papadakis, Judge.

Jerry D. Whatley and John P. Dwyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Harry Joseph Colombo, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

On February 24, 2011, appellant Semaj Leon Frazier sexually assaulted L.Y.S. (the victim). He was convicted after jury trial of rape (count 1), assault with intent to commit rape (count 5) and misdemeanor assault (lesser included offense to count 6). (Pen. Code, §§ 261, subd. (a)(2), 220, subd. (a), 240.)[1] The court found true special allegations that appellant suffered two prior strike convictions (§§ 667, subds. (c)-(j), 1170.12, subds. (a)-(e).)[2] The jury found appellant not guilty of attempted forcible oral copulation, forcible oral copulation, forcible sexual penetration and making a criminal threat (counts 2, 3, 4, and 7); it found various firearm use allegations not true. Appellant was sentenced to two consecutive terms of 25 years to life imprisonment.

In this opinion we reject appellant's challenges to the sufficiency of the evidence supporting the guilty verdicts on the substantive offenses and the true findings on the prior strike allegations. We also reject his objections to CALCRIM No. 362. Finally, we uphold the imposition of consecutive sentences on counts 1 and 5. The judgment will be affirmed.

## FACTS

On the evening of February 23, 2011, the victim went to a bar with her cousin L.S. and L.S's boyfriend. Appellant accompanied them. Appellant and the victim also are cousins and she was acquainted with him. Appellant drove the group to the bar in his truck. They remained at the bar, drinking and socializing, until closing time.

The victim asked appellant to drive her home. Appellant ignored this request. He stopped at the home L.S shared with her mother, who is also the victim's aunt. The victim needed to use the bathroom so she accompanied L.S. and L.S's boyfriend to the

---

[1] Unless otherwise specified all statutory references are to the Penal Code.

[2] A third prior strike allegation was dismissed on motion of the prosecutor.

front door. Appellant sighed like he was in a hurry so the victim said, "Forget it, I can hold it until I get home," and returned to the vehicle. Instead of taking the victim home, appellant drove to J.H.'s house, which was nearby. J.H. is appellant's grandfather and appellant lived with him.

Appellant told the victim that he needed to use the bathroom and went inside the house. The victim was familiar with the house. She went inside and used the bathroom. Afterwards, she saw appellant standing in the hall. She told him that he could use the bathroom. Appellant replied in an aggressive tone of voice, "I already used the restroom but you come here." He grabbed her shirtsleeve. She pulled away from him and told him to take her home. Appellant said, "You gonna give me some first." Then he said, "Bitch, come here." The victim protested, saying, "Why are you doing this? I'm your cousin. Don't do this, just take me home." Appellant responded, "Bitch, shut up." The victim called out to J.H. J.H., who suffered from dementia, did not respond.

Appellant forcibly removed the victim's boots, belt and yellow shirt. He pulled down her pants. She was crying and pleading with him to stop. Appellant exposed his erect penis and pushed the victim's head towards his genitals, attempting to force her to perform oral sex on him. She continued to cry and beg him to take her home. Then appellant performed oral sex on her for a minute or two. The victim called out to J.H. and appellant told her to be quiet.

Appellant got up and went into another room. The victim ran into J.H.'s bedroom. She begged J.H. for help but he did not respond to her. A moment later, appellant entered the bedroom. The victim thought appellant had armed himself with a gun. He pulled her back into the living room and flung her over the couch. The victim felt "hard metal coldness to the back of my head, and that's when [she] believed that, to where it was a gun, and [she] just had to totally submit myself to him." Appellant placed his fingers inside her vagina for a couple minutes. Then he pushed the victim off the couch and onto the floor. He had sexual intercourse with her for approximately 15 to 20

3.

minutes. The victim was on her knees and appellant was behind her. During the intercourse, appellant hit the victim on the back of her head and on her back. He said, "Bitch, you know you like it, you know you wanted it." The victim does not know if he ejaculated. She did not resist because she believed he was holding a gun next to her head.

The victim told appellant that she could not breathe because of her asthma and she needed her inhaler. Appellant withdrew his penis from her vagina. He handed her his inhaler. She took a couple puffs from it and told him that it was not working and she needed her inhaler. She asked appellant to let her get her purse from the truck. He opened the front door for her. Instead of going to appellant's truck, the victim ran to her aunt's house.

She banged on the front and her aunt opened it. The victim "fell into her [aunt's] arms" and said that appellant raped her. Appellant had followed the victim and he joined her inside the house. The victim told L.S. "what he had done to me." Appellant denied the accusation saying, "She's lying, I didn't do that to her, she's lying." The victim hit appellant and they started fighting. Appellant "slammed [the victim] on the ground and stood over [her] and started socking [her]." While the victim was on the ground, she kicked or slammed into appellant, who fell against a window and broke it.

Antonette Turner was present during these events. Turner testified that after the fight appellant told her that he "did not put his penis in [the victim]—he fingered her and ate her out." Appellant had a handgun in the waistband of his pants. He pulled it out and said that he wanted to "blow [the victim's] head off." Appellant asked Turner to "promise not to tell on him." She responded, "Yes, I wouldn't testify on him."

Appellant left the house when he heard the victim say that she was going to call the police. The victim's aunt called 911 and handed the phone to the victim. The victim reported to responding police officers that appellant had raped her while armed with a gun.

4.

Hanford Police Detective Daren Matteson[3] interviewed the victim at the police station. She appeared distraught and was crying. He understood her to have said that appellant brought the gun out after she refused to take her clothes off.

Patricia Driscol, who is a sexual assault nurse examiner, conducted a sexual assault examination on the victim. Driscol observed bruises on the victim's upper right chest area, her right shoulder, her upper right arm and lower left arm. Also, both of her knees had redness on them. There was a scratch on her upper back between her shoulder blades.[4] Driscol collected specimen samples from the victim's body.

Mindy Crow, who is a senior criminalist, examined the specimen samples. Male DNA consistent with appellant's DNA profile was detected on the vulvar sample. Crow testified that she "could not eliminate Semaj Frazier from contributing that. The profiles were the same." Crow also testified that "[t]he 17-locus Y-STR male DNA haplotype, which means profile, was searched in the US Y-STR data base … [¶] … this haplotype is expected to occur in no more than approximately one in 936 African Americans, one in 1,065 Caucasians and one in 561 Hispanic[s]."

J.H.'s house was searched on February 24, 2011. A woman's yellow shirt and a woman's black shirt were found on top of a chair that was positioned outside the front door. A loaded Colt .22-caliber pistol with a chambered live round was found inside a file cabinet that was located in the northeast bedroom. The pistol was resting in between

---

[3] To increase readability a witness's title (e.g., Detective, Officer) will be omitted after the initial reference to the witness. No disrespect is intended or implied by this informality.

[4] Driscol did not observe any bruising in the victim's vaginal area, which Driscol testified was not unusual because "[t]he mucus membranes there are very forgiving." Driscol estimated that about 75 percent of victims she examined did not have any findings in the vaginal area. She testified that the absence of genital findings does not indicate that a sexual assault did not occur.

some papers and folders. The gun was not in its holster, which was found nearby. Turner identified this gun as being the same type of gun as the one appellant showed her.

Appellant was photographed on February 24, 2011. He had two quarter-inch abrasions on his right hand and a scratch on the upper left shoulder area of his back.

The defense rested on the state of the evidence.

After the jury returned its verdicts, trial was held on the prior strike allegations. Evidence was presented proving that in 2003 appellant pled guilty to two counts of robbery in the District Court, Clark County, Nevada.[5] The trial court found beyond a reasonable doubt that each robbery conviction was a strike offense. It found the two prior strike allegations true.

## DISCUSSION

### I. The Convictions Are Supported By Substantial Evidence.

Appellant argues that there is insufficient evidence to support the guilty verdicts. He does not argue that the People failed to prove a specific element of rape, assault with intent to commit rape or simple assault. Rather, he contends the record does not contain substantial evidence proving that appellant was the victim of a sexual assault.

Our role in determining the sufficiency of the evidence is limited. We review "'the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Tafoya* (2007) 42 Cal.4th 147, 170.) We do not reweigh the evidence or redetermine the credibility of the witnesses. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) All reasonable inferences are drawn in support of the judgment. (*People v. Wader* (1993) 5 Cal.4th 610, 640.) "If the circumstances reasonably justify the jury's findings, the

---

[5] The documentary proof of the prior strikes will be set forth in greater detail as part of the discussion of appellant's challenge to the sufficiency of the evidence.

reviewing court may not reverse the judgment merely because it believes that the circumstances might also support a contrary finding." (*People v. Ceja* (1993) 4 Cal.4th 1134, 1139.)

The testimony of a single witness is sufficient to prove a disputed fact and support a conviction, unless his or her testimony is physically impossible or inherently improbable. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) The jury "may reject a part of the testimony of a witness while believing other portions of his testimony." (*People v. Langley* (1974) 41 Cal.App.3d 339, 348.) "'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]'" (*People v. Thornton* (1974) 11 Cal.3d 738, 754.) "Except in … rare instances of demonstrable falsity, doubts about the credibility of the in-court witness should be left for the jury's resolution." (*People v. Cudjo* (1993) 6 Cal.4th 585, 609.)

Appellant contends that the victim's testimony is inherently improbable and, therefore, cannot constitute substantial evidence supporting the guilty verdicts. This is a difficult standard to satisfy. "'"'To warrant the rejection of the statements given by a witness who has been believed by the [trier of fact], there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]" …' [Citation.]" (*People v. Barnes* (1986) 42 Cal.3d 284, 306.) A witness's testimony will be deemed improbable only if it is "'so inherently incredible, so contrary to the teachings of basic human experience, so completely at odds with ordinary common sense, that no reasonable person would believe it beyond a reasonable doubt.' [Citation.]" (*People v.*

7.

*Hovarter* (2008) 44 Cal.4th 983, 996.) "While an appellate court can overturn a judgment when it concludes the evidence supporting it was 'inherently improbable,' such a finding is so rare as to be almost nonexistent." (*People v. Ennis* (2010) 190 Cal.App.4th 721, 728.)

This is not that rare case. The victim's testimony was neither physically impossible nor inherently improbable. The victim reported the sexual assault immediately and consistently identified appellant as the rapist. Her demeanor was consistent with having suffered an unwanted, violent attack. Contrary to appellant's assertion, relatives do sexually assault other relatives. The victim's trial testimony was largely consistent with her pretrial statements. Her inconsistency concerning the exact time appellant armed himself merely gave rise to a factual question for the jury to resolve. The victim's testimony that, after 15 or 20 minutes of sexual intercourse, appellant gave her his asthma inhaler in response to her statement that she was having difficulty breathing was not incredible or obviously false. This act merely shows that appellant did not want the victim to die. Rapists do not necessarily want to kill their victims and some even exhibit concern for them, particularly after the sexual penetration has been accomplished.

Appellant's argument overlooks the inconvenient fact that the victim's testimony was corroborated by physical evidence. Male DNA consistent with appellant's DNA profile was found on the victim's genital area. The victim's knees were reddened; there were several bruises on her upper body and a scratch on her back.[6] Also, a loaded handgun with a chambered round was found in appellant's residence. It was separated

---

[6] It is possible that the victim sustained the bruises during the fight with appellant at her aunt's house. Yet, on appeal we presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment. Since the jury reasonably could have found that appellant caused the bruises during the sexual assault, we presume they occurred at that point in time.

from its holster and shoved down among some papers in a file cabinet. Turner identified this gun as being the same type of gun as the one appellant showed her.

Appellant posits the following alternative scenario: "It is likely that they had engaged in consensual sexual [activities] … [and the victim] became hysterical at [J.H.'s] residence, perhaps because of a bad reaction to drugs as well as alcoholic beverages." This scenario is not supported by the trial evidence. There is no proof of consensual sexual intercourse. Appellant specifically told Turner that he had not engaged in sexual intercourse with the victim. Appellant did not provide any pretrial statements or testify at trial. The victim consistently maintained that appellant forcibly raped her. Also, there is no evidence proving that the victim ingested illicit narcotics or had a "bad reaction" to the alcohol she drank earlier that night. The victim fled to her aunt's house immediately after the attack and the police were called shortly thereafter. No one testified that the victim appeared to be under the influence of drugs or that she was drunk. Appellant did not make any statements indicating that, while at his house, the victim became hysterical due to a "bad reaction" to drugs or alcohol. The victim's refusal to give a blood sample during the sexual assault examination does not give rise to an inference that she consumed illicit narcotics. Driscol testified that the absence of bruising or tearing in the victim's genital area was not unusual and does not indicate that a sexual assault did not occur. Appellant's alternative scenario is substantially less believable than the victim's testimony, which is corroborated by the presence of DNA matching appellant's profile on the victim's genital area, reddening of her knees, bruising on her upper body and the presence of a loaded pistol at the crime scene that appeared to have been hastily concealed in a file cabinet.

In sum, a rational trier of fact could have found the victim credible and, therefore, we reject appellant's claim that her testimony is inherently improbable. (*People v. Hovarter, supra,* 44 Cal.4th at p. 997.) Having carefully examined the record, we find

ample proof of every element necessary to prove the crimes of rape, assault with intent to commit rape and misdemeanor assault.

## II. The True Findings On The Prior Strikes Are Supported By Substantial Evidence.

### A. Facts.

The People alleged that appellant suffered two prior robbery convictions in Nevada and that these convictions were prior strikes within the meaning of the three strikes law. (§§ 667, subds. (c)-(j), 1170.12, subds. (a)-(e).)

At an unspecified point in time an information was filed in the District Court, Clark County, Nevada in case No. C182007 charging appellant with one count of robbery and one count of burglary (case 1) and an information was filed in case No. C180700 charging him with one count of robbery (case 2).[7]

On April 28, 2003, a second amended information was filed in case 1. It charged appellant with one count of robbery and one count of burglary. The robbery count alleged that on October 3, 2001, appellant "wil[l]fully, unlawfully, and feloniously" took a Chevrolet Corvette and a cell phone from Roy Duane Ward "by means of force or violence, or fear of injury to, and without the consent and against [his] will." The burglary count alleged that on October 3, 2001, appellant entered a bank with the intent to commit forgery.

Also on April 28, 2003, a guilty plea agreement was filed in case 1. It recites that appellant will plead guilty in case 1 to the crimes of robbery and burglary "as more fully alleged in the charging document attached as Exhibit '1'." The plea agreement recites that "by pleading guilty I admit the facts which support all the elements of the offense(s) to which I now plead as set forth in Exhibit '1'." Exhibit 1 is a copy of the second

---

[7] The record does not contain the original informations that were filed in these cases.

10.

amended information in case 1. The plea agreement provides that appellant will also plead guilty to robbery in case 2.

On May 15, 2003, an amended information was filed in case No. 2 charging appellant with one count of robbery. It alleged that on December 9, 2001, appellant "did wil[l]fully, unlawfully, and feloniously" take money from Daniel Romo "by means of force or violence, or fear of injury to, and without the consent and against [his] will."

Also on May 15, 2003, a guilty plea agreement was filed in case 2. It recites that appellant will plead guilty "*pursuant to Alford*" to the crime of robbery "as more fully alleged in the charging document attached hereto as Exhibit '1." (Italics added.) The plea agreement recites that "by pleading guilty *pursuant to Alford* I admit the facts which support all the elements of the offense(s) *can be proven against m*e to which I now plead as set forth in Exhibit '1'." (Italics added.) The italicized phrases were handwritten additions to the printed guilty plea agreement. Exhibit 1 is a copy of the amended information in case 2.

On July 17, 2003, a judgment of conviction was filed in case 2. It recites that appellant pled guilty to the crime of robbery and was sentenced to 24 to 84 months.

On November 14, 2003, an amended judgment of conviction was filed in case 1. It recites that appellant entered a plea of guilty to robbery and burglary and was sentenced to 24 months to 84 months for robbery plus 12 months to 48 months for burglary. The sentences in cases 1 and 2 were ordered to run concurrently.

A certified copy of appellant's custodial record from the Nevada Department of Corrections, his California driver's license photograph and computer generated criminal history summaries were admitted into evidence.

The trial court found beyond a reasonable doubt that each robbery conviction was a strike offense. The court first recognized that the language of the Nevada robbery statute includes offenses that would not constitute the crime of robbery in California. Also, unlike California, the Nevada robbery statute does not require specific intent. Then

11.

the court determined that the People proffered evidence proving beyond a reasonable doubt that appellant pled guilty in case 1 and case 2 to a crime that satisfied the essential elements of the California robbery statute. It reasoned that the guilty plea agreement in each case recited that the information constituted the factual basis for the plea. The information in each case alleged that the robbery was committed "feloniously, and that [word] has been defined as supplying the element of specific intent. So even though it does not appear in the Nevada [robbery] statute, it does appear in the factual basis for the plea the defendant agreed to." Also, the facts of each robbery, as alleged in the information, satisfy the essential elements of the California robbery statute in that appellant feloniously took an item of property from a person by force or fear of injury.

With respect to the handwritten "Alford" notations in the guilty plea agreement pertaining to case 2, the court stated: "The Court is not sure what these notations mean on the plea form in the Nevada case [C180700], it says, 'Pursuant to Alfred' [*sic*]. [¶] So if we were to presume that it was akin to a no contest plea, we also know that no contest pleas still constitute convictions for purposes of priors and three strikes. So the Court finds that to be a non-issue."

### B. The true findings have sufficient evidentiary support.

Appellant argues that the true findings on the strike allegations must be reversed because "[n]either of the two convictions were proven to have been for a strike offense due to the differences in the elements of a Nevada robbery and a California robbery." Respondent contends that the accusatory pleadings and the guilty plea forms prove that appellant pled guilty in each robbery to a felonious taking by force or fear and this satisfies the elements of the California robbery statute. As will be explained, respondent is correct.

### 1. Statutory law.

In 2011, section 667, subdivision (d)(2) provided that a prior strike includes: "A conviction in another jurisdiction for an offense that, if committed in California, is

12.

punishable by imprisonment in the state prison.  A prior conviction of a particular felony shall include a conviction in another jurisdiction for an offense that includes all of the elements of the particular felony as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7." (See also § 1170.12, subd. (b)(2).)  The crime of robbery is listed in section 1192.7, subdivision (c)(19) as a serious felony.

The California Penal Code defines robbery in section 211, which provides: "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

In Nevada, the crime of robbery is defined as follows:

"1.  Robbery is the unlawful taking of personal property from the person of another, or in the person's presence, against his or her will, by means of force or violence or fear of injury, immediate or future, to his or her person or property, or the person or property of a member of his or her family, or of anyone in his or her company at the time of the robbery. A taking is by means of force or fear if force or fear is used to:

"(a) Obtain or retain possession of the property;

"(b) Prevent or overcome resistance to the taking; or

"(c) Facilitate escape.

"The degree of force used is immaterial if it is used to compel acquiescence to the taking of or escaping with the property. A taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear." (Nev. Rev. Stat., § 200.380.)

*People v. McGee* (2006) 38 Cal.4th 682 explained the differences between the statutory elements of robbery under Nevada law from the same crime in California:

"[T]he elements of robbery under Nevada law differed in two respects from the elements of that offense under California law.  First, under Nevada law, robbery requires only *general* criminal intent [citations], whereas under California law, robbery requires a *specific* criminal intent to permanently deprive another person of property [citation].  Second, under Nevada law, a

13.

taking accomplished by fear of *future* injury to the person or property of *anyone in the company of the victim at the time of the offense* qualifies as robbery [citation], whereas under California law such a taking does not [citation]." (*People v. McGee, supra*, 38 Cal.4th at p. 688, fn. omitted.)

**2.    The accusatory pleadings and guilty plea forms prove that appellant pled guilty to all the elements necessary to constitute the crime of robbery in California.**

In determining whether a prior conviction qualifies as a serious felony "the trier of fact may look to the entire record of conviction" to determine the substance of the prior conviction "'*but no further*' [citation] …." (*People v. Reed* (1996) 13 Cal.4th 217, 226.) The record of conviction includes the accusatory pleadings and the guilty plea forms. (*People v. Guerrero* (1988) 44 Cal.3d 343, 345, 356.)

Here, the accusatory pleadings and guilty plea forms in case 1 and case 2 prove that appellant pled guilty to robberies that satisfy all the elements necessary to constitute the crime of robbery in California. He did not plead guilty to the bare elements of the Nevada robbery statute. The guilty plea agreement in case 1 recites that "by pleading guilty I admit the facts which support all the elements of the offense(s) to which I now plead as set forth in Exhibit '1'." Similarly, the guilty plea agreement in case 2 recites that "by pleading guilty pursuant to Alford I admit the facts which support all the elements of the offense(s) can be proven against me to which I now plead as set forth in Exhibit '1'." In each case, exhibit 1 is the accusatory pleading. The accusatory pleadings in case 1 and case 2 each allege that appellant "feloniously" took property from a named individual by force or fear. The word "feloniously" supplies the element of specific intent. (*Litteral v. State* (1981) 97 Nev. 503, 507 [634 P.2d 1226], citing *Traxler v. State* (1952) 96 Okla.Crim. 231 [251 P.2d 815].) Thus, appellant pled guilty in each case to feloniously taking property from the presence of a person by force or fear. This satisfies the elements of the California robbery statute. Accordingly, we hold that the record contains substantial evidence supporting the trial court's determination that the Nevada

robbery convictions qualified as prior strikes and we uphold the true findings on the prior strike allegations.[8]

### III. The Jury Was Properly Instructed On Consciousness Of Guilt.

#### A. Facts.

About 3:40 a.m. several police officers responded to a reported rape. The suspect was described as a Black male named "[S.H.]" Hanford Police Sergeant Albert Cano was familiar with J.H. and drove to his house. He saw a young Black male standing in the front doorway. Cano saw the man look at him briefly and then shut the door and turn off the lights. Another police officer drove into the alley behind the house. Using his flashlight, he looked into the backyard. He saw a Black male exit the house through the back door. As soon as the male saw the flashlight he turned around and ran back inside the house. Using the patrol vehicle's public address system, a third police officer "announced several times for everybody in the residence to come on out." Appellant did not respond.

Cano directed Hanford Police Officer John Bidegaray to place a call into the residence. There were some family members at the scene and one of them provided Bidegaray with appellant's cell phone number. During the next 90 minutes Bidegaray repeatedly called the house's land line and appellant's cell phone. Eventually, a man answered one of the calls. Bidegaray asked to speak to Semaj. In response, the man said

---

**8** The handwritten references to "Alford," which we assume pertain to *North Carolina v. Alford* (1970) 400 U.S. 25, in the guilty plea agreement in case 2 do not compel a different conclusion. An *Alford* plea is not an admission of guilt but only consent to be punished as guilty. (*Id*. at pp. 35-36, fn. 8.) Notwithstanding appellant's protestation of innocence, he pled guilty to the facts as alleged in the amended information. The guilty plea agreement in case 2 recites that appellant admitted the facts as set forth in exhibit 1, which is the amended information. This includes the allegation in the amended information that he feloniously took money from the victim's presence by force or fear.

"that I had the wrong number, and no one by the name of Semaj Frazier was at that residence." The man identified himself as "[J.H.]." Bidegaray knew the person was not J.H. because he knew J.H. personally and had spoken with J.H. on prior occasions. Eventually, appellant exited the house. Bidegaray identified appellant's voice as matching the voice he heard during the telephone conversation.

At the People's request, the court gave CALCRIM No. 362, which instructs on false statements as consciousness of guilt.[9] Defense counsel stated that he objected to the instruction but did not articulate a specific legal ground. The court ruled that it "will allow [CALCRIM No.] 362 over objection."

**B.     CALCRIM No. 362 is not an argumentative pinpoint instruction.**

Appellant contends that CALCRIM No. 362 and its predecessor, CALJIC No. 2.03, "are impermissible argumentative prosecution pinpoint instruction[s]." This issue has been decided adverse to appellant's position.

"When testimony is properly admitted from which an inference of a consciousness of guilt may be drawn, the court has a duty to instruct on the proper method to analyze the testimony." (*People v. Edwards* (1992) 8 Cal.App.4th 1092, 1104.) CALCRIM No. 362 is the successor to CALJIC No. 2.03. (*People v. McGowan* (2008) 160 Cal.App.4th 1099, 1103.) "The California Supreme Court has consistently upheld CALJIC No. 2.03

---

[9] CALCRIM No. 362 provides:

"If [the] defendant [_____ <insert name of defendant when multiple defendants on trial>] made a false or misleading statement before this trial relating to the charged crime, knowing the statement was false or intending to mislead, that conduct may show (he/she) was aware of (his/her) guilt of the crime and you may consider it in determining (his/her) guilt. [You may not consider the statement in deciding any other defendant's guilt.]

"If you conclude that the defendant made the statement, it is up to you to decide its meaning and importance. However, evidence that the defendant made such a statement cannot prove guilt by itself."

against various and sundry attacks." (*Id*. at p. 1104, fn. 3.) In *People v. Kelly* (1992) 1 Cal.4th 495, it rejected the defendant's argument that CALJIC No. 2.03 was argumentative and favorable to the prosecution. (*Id*. at p. 531.) *McGowan* upheld the constitutionality of CALCRIM No. 362, reasoning that "[a]lthough there are minor differences between CALJIC No. 2.03 and CALCRIM No. 362 …, none is sufficient to undermine our Supreme Court's approval of the language of these instructions.… Thus, like CALJIC No. 2.03, CALCRIM No. 362 is not an unlawful 'pinpoint' instruction." (*McGowan, supra*, 160 Cal.App.4th at p. 1104.) *Kelly* is binding authority on this court (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455) and we discern no basis to depart from *McGowan*. Accordingly, we conclude that CALCRIM No. 362 correctly sets forth the applicable legal principle and is not an argumentative and biased pinpoint instruction.

### C.    CALCRIM No. 362 is supported by trial evidence.

Appellant also contends that CALCRIM No. 362 should not have been given because the jury could not reasonably infer from his false statements to Bidegaray a consciousness of guilt concerning the charged offenses. We disagree.

In our view, appellant's false statements that "no one by the name of Semaj Frazier was at that residence" and that he was "[J.H.]" support an inference of a consciousness of guilt regarding the sexual assault. The timing of appellant's statements and the surrounding circumstances are important. The victim fled to her aunt's house immediately after the sexual assault. Appellant followed her. She accused him of rape in the presence of L.S. and Turner. Appellant left the house when he heard the victim say that she was going to call the police. Police officers arrived at J.H.'s house a short time later. Appellant tried to evade the police by leaving through the back door but when he saw a police officer's flashlight he hurriedly retreated into the house. Appellant ignored several requests to come out of the house. At this point Bidegeray repeatedly called the house's land line and appellant's cell phone. Appellant answered one of the calls and

17.

made the false statements to Bidegeray. From these facts, the jury could reasonably conclude that appellant knew the officers wanted to talk to him about the sexual assault and, therefore, his false statements to Bidegaray evidence a consciousness of guilt.[10] Thus, CALCRIM No. 362 was supported by evidence adduced at trial and was properly included in the jury charge.

## IV. Appellant Was Properly Sentenced.

### A. Facts.

Appellant was sentenced on September 27, 2011. Defense counsel argued that "the one issue that the Court has before it is are you going to run the two felony counts consecutive or concurrent.… We believe that they should be run concurrent under [section] 654."[11] Defense counsel asserted that the convictions for assault with intent to commit rape and the rape itself constitute "essentially one criminal act."

The court responded, "The general rule in sexual assault cases is that if one act occurs, and the defendant has an opportunity to reflect before the second act occurs, then those sentences run consecutively. There were a number of acts that occurred here. And of course with the finding of not guilty, I repeat myself, we don't consider those. But we do consider when each offense occurred that Mr. Frazier was convicted of. And we do consider the totality of the circumstances that involve the facts that were proven at trial."

---

[10] Appellant posits that his false statements "could have been motivated solely by his fear of being found in possession of [the] gun" that was hidden in the file cabinet. Respondent replies, "Appellant was neither charged with nor tried for being a felon in possession of a firearm. Moreover, because he did not testify it is entirely speculative for him to now claim on appeal that his false or misleading statements to the police … derived from any particular state of mind." Respondent's argument on this point is persuasive and we agree with it.

[11] Defense counsel's understanding of section 654 was flawed. Section 654 requires the sentence imposed for a crime to be stayed in certain circumstances. It does not pertain to the decision whether to order a sentence to be served concurrently or consecutively.

The court found that the assault with intent to commit rape and the rape "were separate acts, that there was time between those acts. The victim, according to her testimony, basically was begging you and telling you how wrong this was, and then you proceeded to commit the next offense." The court sentenced appellant under the three strikes law to two terms of 25 years to life imprisonment and ordered "those two terms [to] run consecutively, for 50 years to life."

**B.     The assault with intent to commit rape and the rape were separate acts.**

Appellant was sentenced to two consecutive terms of 25 years to life pursuant to the three strikes law and section 667.6, subdivision (d).[12]  In explaining its decision to sentence appellant to two consecutive terms of 25 years to life, the trial court referenced the three strikes law and paraphrased subdivision (d) of section 667.6.  It then found that the assault with intent to commit rape and the rape were "separate acts, that there was time between those acts."  Appellant disputes this finding, arguing that "the assault and the rape were part of a single act of forcible rape."  Based on this premise, he argues that section 654 required the court to stay the sentence imposed for the assault with intent to commit rape.  This argument is not convincing.

Subdivision (d) of section 667.6 provides that a consecutive term shall be imposed for each violation of specified crimes, including rape and assault with intent to commit rape, "if the crimes involve separate victims or involve the same victim on separate occasions."  The subdivision continues:

> "In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior.  Neither the duration of time between

---

[12] Subdivision (c) of section 667.6 is not applicable.

19.

crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions." (§ 667.6, subd. (d).)

"Once a trial judge has found under section 667.6, subdivision (d), that a defendant committed offenses on separate occasions, we may reverse only if no reasonable trier of fact could have decided the defendant had a reasonable opportunity for reflection after completing an offense before resuming his assaultive behavior." (*People v. Garza* (2003) 107 Cal.App.4th 1081, 1092.)

Applying that deferential standard, we conclude the trial court reasonably determined that the assault with intent to commit rape and the rape were separate acts. Appellant forcibly grabbed the victim's shirtsleeve and demanded sex. Then he forcibly removed the victim's boots, belt and shirt. He pulled down her pants.[13] At some point the victim fled to J.H.'s bedroom, begging him to help her. This break afforded appellant ample opportunity to reflect on his actions and stop the sexual assault, but he nevertheless resumed it. Appellant entered the room with what the victim believed was a gun. She stopped resisting him at this point. Yet, appellant continued battering her. He threw her over a couch and then threw her onto the floor. He raped her. He hit her in the head and back during the rape. Thus, the record shows that the assault preceded the rape and that further assaultive behavior occurred after the sexual penetration commenced. The force used during the assault went well beyond what was necessary to accomplish the rape. There was a break during which appellant had an opportunity to reflect on his actions. He decided to resume his sexually abusive conduct. A reasonable trier of fact could have found from the totality of the circumstances that the two crimes occurred on separate occasions for purposes of applying section 667.6, subdivision (d). Therefore, the trial

---

**13** Since the jury acquitted appellant on the oral copulation and digital penetration charges we have not considered these aspects of the victim's testimony.

court did not err by refusing to stay count 5 pursuant to section 654. (*People v. Garza, supra,* 107 Cal.App.4th at pp. 1092-1093; *People v. Plaza* (1995) 41 Cal.App.4th 377, 384.)

## DISPOSITION

The judgment is affirmed.

_____
LEVY, J.

WE CONCUR:


_____
WISEMAN, Acting P.J.


_____
DETJEN, J.