[No. C039029. Third Dist. Apr. 14, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
JULIO ROMERO GARZA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

 \*Pursuant to rule 976.1 of the California Rules of Court, this opinion is certified for publication with the exception of parts I through VII and part X of the DISCUSSION.

1082

## COUNSEL

John Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, John G. McLean and Aaron R. Maguire, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMS, Acting P. J.**—In a case arising out of defendant Julio Romero Garza's sexual assault on Cynthia R. on August 23, 2000, a jury convicted defendant on 18 felony counts: kidnapping for rape (count 1; Pen. Code, § 209, subd. (b)(1); all further undesignated section references are to the Penal Code), forcible oral copulation (counts 2-6; § 288a, subd. (c)(2)), forcible rape (counts 7-14; § 261, subd. (a)(2)), forcible digital penetration (count 15; § 289, subd. (a)(1)), sexual battery (count 16; § 243.4, subd. (a)), false imprisonment (count 17; § 236), and assault with a firearm (count 18; § 245, subd. (a)(2)). The jury also found that defendant personally used a firearm as to all counts. (§ 12022.53.) Finally, the jury found as to counts 2 through 15 that defendant kidnapped the victim for the purpose of committing rape, forcible oral copulation, or digital penetration, and substantially increased the risk of harm to the victim over and above that necessarily present in the underlying crime. (Cf. § 667.61, subds. (a), (d).)

The trial court sentenced defendant as follows: on count 2 (forcible oral copulation), the court imposed an indeterminate life sentence with a minimum of 25 years served before parole eligibility. (§§ 288a, subd. (c)(2), 667.61, subds. (a), (b), (e).) On counts 3 (forcible oral copulation), 7 (rape), and 15 (forced digital penetration), the court imposed consecutive determinate aggravated terms of eight years, plus 10 years for the firearm use enhancements. (§§ 288a, subd. (c)(2), 261, subd. (a)(2), 289, subd. (a)(1), 12022.53, subd. (b).) On counts 4 through 6, the remaining forcible oral copulation counts and firearm use enhancements, the court ran the 18-year sentences concurrent to that on count 3; similarly, on counts 8 through 14, the remaining rape counts and firearm use enhancements, the court ran the 18-year sentences concurrent to that on count 7. The court stayed execution of sentence on count 1 (kidnapping to commit rape) pursuant to section 209, subdivision (d), which bars punishment for that offense where an enhancement is imposed under section 667.61 for rape; the court also stayed execution of sentence on counts 16 through 18 pursuant to section 654.

Finally, the court revoked defendant's probation in a prior case (*People v. Garza* (Super. Ct. Sacramento County, No. 98F07051B)) and imposed an eight-month consecutive sentence for violation of Vehicle Code section 10851, subdivision (a).

Although the trial court first imposed the indeterminate life term, followed by the determinate terms, at the conclusion of sentencing, the trial court summed up as follows: "Accordingly, Mr. Garza, you are sentenced to the imprisonment in state prison for 54 years, plus an additional life sentence with a minimum parole eligibility of 25 years."

This summation was correct. Section 669 provides in pertinent part: "Whenever a person is committed to prison on a life sentence which is ordered to run consecutive to any determinate term of imprisonment, the determinate term of imprisonment shall be served first and no part thereof shall be credited toward the person's eligibility for parole as calculated pursuant to section 3046 or pursuant to any other section of law that establishes a minimum period of confinement under the life sentence before eligibility for parole." Thus, "whenever a person is sentenced to prison on a life sentence and any other term of imprisonment for a felony conviction, and the sentences are to run consecutively, the sentence must provide that the determinate term of imprisonment shall be served first and the life sentence shall be consecutive to the determinate term, and not vice versa." (*People v. Grimble* (1981) 116 Cal.App.3d 678, 684-685 [172 Cal.Rptr. 362], followed in *In re Thompson* (1985) 172 Cal.App.3d 256, 261 [218 Cal.Rptr. 192] and *People v. Webber* (1991) 228 Cal.App.3d 1146, 1172 [279 Cal.Rptr. 437]; see *People v. Jenkins* (1995) 10 Cal.4th 234, 251 [40 Cal.Rptr.2d 903, 893 P.2d 1224].) Since we are modifying the judgment and directing the trial court to prepare a new abstract of judgment, the new abstract can reflect the order in which defendant shall serve the terms to which he was sentenced. (*People v. Webber, supra,* 228 Cal.App.3d at p. 1172.)

On appeal, defendant contends: (1) The admission of propensity evidence under Evidence Code section 1108 violated defendant's federal constitutional rights to due process and equal protection. (2) The evidence should have been excluded under Evidence Code section 352 as unduly prejudicial. (3) Insufficient evidence supports defendant's convictions on counts 2 through 6 and 7 through 14. (4) The trial court erred prejudicially by restricting defendant's right under the Sixth Amendment to the United States Constitution and Evidence Code section 782 to present evidence and cross-examine the victim as to whether the sperm found in her vagina during the sexual assault examination was deposited during intercourse with another

person on the morning of August 22, 2000. (5) The trial court erred prejudicially by instructing the jury on flight (CALJIC No. 2.52). (6) The trial court erred prejudicially by instructing the jury with CALJIC No. 17.41.1. (7) The cumulative prejudice from the trial court's errors compels reversal. (8) Consecutive sentencing on counts 3, 7, and 15 was not mandatory under section 667.6, subdivision (d), as the trial court thought; therefore the matter must be remanded for resentencing.

The Attorney General contends a 10-year firearm use enhancement should have been imposed on count 2.

In the published portion of the opinion, we shall conclude that the trial court properly imposed consecutive sentences on counts 3, 7, and 15 and also properly imposed full 10-year firearm use enhancements on those counts. In the unpublished portion of the opinion, we reject defendant's other contentions of prejudicial error and we conclude a 10-year firearm use enhancement should have been imposed on count 2. (§ 12022.53.) We shall therefore modify the judgment to impose the 10-year enhancement on count 2 and affirm the judgment as modified.

## FACTS

*Prosecution case*

On August 23, 2000, the 19-year-old victim was visiting a friend at an apartment complex in north Sacramento. Between 11:30 p.m. and 1:00 a.m., she accepted a ride from defendant, whom she knew, to take her to Michelle D.'s apartment in the complex, where she was staying.

After defendant started driving toward Michelle D.'s apartment, he asked the victim to buy him cigarettes, claiming he did not have his identification with him. She said she also did not have identification, but he· insisted the store clerk would sell her cigarettes anyway.

As defendant drove on (having passed Michelle D.'s apartment), he talked about his financial problems and his girlfriend's pregnancy. Then he displayed a gun. When the victim asked why he had one, he ordered her to take her clothes off, then said he was just kidding. He did this two or three times. At first she thought it was a joke, but then she became scared, started crying, and asked him to take her home.

Instead, defendant drove past an AM/PM market on Watt Avenue and parked near a warehouse, remote from the street or any passersby. The

victim asked: "What [are] we doing here[?]" Defendant replied: "I brought you here to fuck you."

Defendant ordered the victim to "go down on" him. She asked him not to make her do that because she had never done it before. He grabbed the back of her neck, pointed the gun at her, and told her to "suck [his] dick." He said if she did that he would not force her to have sex with him. Then he pulled her head toward his lap and forced her to put his penis in her mouth as he held the gun to the back of her head. When she tried to pull back, he pressed the gun against her head and said: "[K]eep doing it or I'm going to shoot you." Defendant forced her to orally copulate him six or seven times.

Letting go of the victim's neck, defendant ordered her to take off her clothes. When she refused, he punched her in the left eye, then put the gun to her temple and threatened to shoot if she did not comply. She and defendant got undressed. Reclining the passenger seat, defendant got on top of her.

Defendant put his finger in the victim's vagina. Then he began to "play" with her chest. He then put his gun on the back seat, pulled the victim's legs around his shoulders, and forced his penis inside her vagina. Crying, she told him to stop or at least to use a condom; he put his hand over her mouth and said, "Shut up." He removed and reinserted his penis about eight times, then ejaculated.

After defendant and the victim dressed, he began driving back to the apartment complex. He told her: "If I find out that you have blood on my car, I'm going to come back and beat the shit out of you." She promised not to call the police or say anything to anyone if he took her home. Before letting her out, he apologized, saying, "I could have killed you . . . and I didn't."

Once inside Michelle D.'s apartment, the victim broke down crying, told Michelle D. what happened, then went into the bathroom and vomited. Michelle D. called Krista A. and Herman R., friends of the victim, who came over. When the police came in response to a 911 call, they took the victim to UC Davis Medical Center for a sexual assault examination.

The victim reported that she had been forced at gunpoint to perform oral copulation, forcibly penetrated with a finger, and raped. The examiner found the victim's genitals and labia very tender and her cervix blood-streaked; the victim also suffered from a bruise around her left eye consistent with being hit in the face, and tenderness in the back of her head. All findings were consistent with sexual assault.

After the police took defendant into custody in the early morning of August 23, 2000, he waived his rights against self-incrimination and spoke to an officer in a videotaped interview. At first he denied that anything had happened: he had merely driven the victim to the AM/PM market and back to the apartment complex. Later he said he had talked to the victim about his problems, then parked by a warehouse and asked her to have sex with him; she agreed and they had consensual sex. He admitted taking out a .38-caliber snub-nosed revolver earlier and waving it around. After mentioning the gun, he first claimed he had taken it to a friend's house after dropping the victim off, then admitted he had thrown the gun and a bag full of bullets out the car window after he saw a marked police car turn around behind him.

The detective left defendant alone to write to the victim. Defendant wrote and signed the following: "Dear Cynthia, I'm writing this letter to say that I am sorry for putting you through what I did that night. I am sorry for putting a gun to your head and making you do something that you didn't want to do. I would also like to say thank you for calling the cops on me because hopefully now I can get some help. But once again, I am really, really sorry for hurting you and I mean that from the heart."

Later that morning, defendant directed the police to the spot where he had thrown out the gun and bullets. The police could not find the gun, but found two .38-caliber bullets.

*Defense case*

Testifying on his own behalf, defendant stuck to his last story to the police: the sexual acts with the victim were consensual, although he "pushed her into doing it" by telling her he would be her boyfriend and take care of her.

According to defendant, he and the victim had flirted in the past; thus, when he had the chance to pick her up on the night of August 23, 2000, he thought he would take the opportunity to talk to her. When he picked her up, he told her he wanted to go buy cigarettes, then started flirting; she reciprocated.

They drove to the AM/PM and made purchases. Driving away, he asked if the victim would mind stopping and talking; she said she would not, so he parked by a warehouse.

He told the victim he "would treat her right" and complained of money problems. He asked her if he could kiss her; she said she did not care. He kissed her and she responded.

When he asked the victim if they could have sex, she said she "wasn't that type of girl." However, when he resumed kissing her and started rubbing his hands on her, she did not protest. He unbuttoned her shorts and started rubbing her down there, then asked again if they could have sex.

Defendant asked the victim if she ever "went down on somebody"; she said she did not do that. He told her to try it once and she did, but after he put his penis in her mouth she got up and said she did not like it and could not do it anymore.

After that, they stripped. At defendant's request, the victim leaned back in the passenger seat. He climbed over, and they had sex. Defendant penetrated her vagina only once. She asked him to slow down, but did not scream or ask him to stop. He never hit her. After a while, he stopped because he felt disgusted.

Getting out of the car, defendant began arguing with the victim. She asked, "Where do we stand at?" He said, "[N]owhere," adding that he had a child on the way. She called him a dog; he called her dirty and a bitch.

Defendant drove the victim back to the apartment complex, apologizing for his name-calling on the way. As she got out, she said he was "no good" and "just like all the rest of them." She then asked, "Who gets the last laugh?" He sarcastically invited her to call the cops.

After dropping the victim off, defendant went to get something to eat. An hour later, he got a page from Renee A., the victim's cousin; when he returned the call, Renee A. asked him, "[w]hat did you do to my cousin?" Krista A. got on the phone and told defendant that the victim had said he raped her. Defendant told Krista A. she had known him for 13 years and knew he would never do such a thing.[1] He then said he would call her right back.

Defendant drove to another woman's house, then called Renee A. and Krista A. back. They told him the police were there; he said he would return and asked them to keep the police there. En route to the apartment complex, he threw his gun and bullets out the car window. The police stopped him inside the entrance to the complex.

Defendant tried to explain away incriminating evidence from his police interview and his letter to the victim. Although he never hit her or waved a gun at her, he falsely told the police he had done so because he was tired of

---

[1] On cross-examination, defendant denied having raped another victim named R. in 1996.

being questioned. His letter was an apology for talking her into having sex with him. He said in the letter he had put a gun to her head and forced her because the police told him to include that in the letter. When he thanked her in the letter for calling the police, he was being sarcastic.

*Rebuttal*

R. testified that she met defendant when she was 13 and they went together for the next four years. On July 4, 1996, defendant put four bullets into a five-shot revolver, spun the cylinder, put the gun next to her temple, and pulled the trigger; she heard a click. She told him she did not want to be with him anymore; he told her to shut up and said she was not going anywhere until she had sex with him. He pushed her onto the floor, slapped her face, pulled off her pants, and raped her. She had not reported the crime because he told her he would kill her if she mentioned it to anyone. She denied having communicated with defendant by telephone or mail in 1997 while he was in the California Youth Authority.

Krista A. testified that when she arrived at Michelle D.'s apartment in the early morning of August 23, 2000, the victim was crying and screaming. She said defendant had forced her to have oral sex and intercourse at gunpoint and had hit her. The tape of Krista A.'s 911 call was played; the victim's crying voice could be heard in the background.

*Surrebuttal.*

Defendant produced a letter, which he said was written by R., sent to him at the California Youth Authority in 1997. It said: "[Y]ou were my first love but you did me wrong. Sorry it ended the way it did. You will always be . . . in my heart for life."

DISCUSSION

I-VII*

. . . . . . . . . . . . . . . . . . . . . . .

VIII

Defendant contends the trial court erroneously sentenced him to consecutive terms on count 3 (forcible oral copulation; § 288a, subd. (c)(2)), count 7 (forcible rape; § 261, subd. (a)(2)), and count 15 (forcible digital

*See footnote, *ante*, page 1081.

penetration; § 289, subd. (a)(1)) in the mistaken belief that section 667.6, subdivision (d), required such sentencing. We shall conclude the trial court lawfully sentenced defendant.

The trial court followed the probation report's recommendation of consecutive sentencing on counts 3, 7, and 15 under section 667.6, subdivision (d), finding: "there really were three separate occasions of sex acts: The series of forcible oral copulation[s], then the sequence of fondling and digital penetration and then a series of forcible rapes."

The People assert defendant waived his challenge to the sentencing by failing to object below. (See *People v. Scott* (1994) 9 Cal.4th 331, 356-357 [36 Cal.Rptr.2d 627, 885 P.2d 1040] (*Scott*).) The People are incorrect. ▮ *Scott* expressly exempts unauthorized sentences from its waiver rule. (*Id.* at p. 354 & fn. 17.) ▮ Defendant claims the trial court could not lawfully sentence him to consecutive terms on counts 3, 7, and 15 under section 667.6, subdivision (d), because his offenses on those counts did not occur on separate occasions as that provision requires. If he is correct, the sentence was unauthorized in this respect. He has not waived the issue.

Section 667.6, subdivision (d), provides in part: "A full, separate, and consecutive term shall be served for each violation of . . . paragraph (2) . . . of subdivision (a) of Section 261, . . . subdivision (a) of Section 289, . . . or of committing . . . oral copulation in violation of Section . . . 288a by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim . . . if the crimes involve . . . the same victim *on separate occasions*.

*"In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his . . . actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his . . . opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions."* (§ 667.6, subd. (d), italics added; see *People v. Jones* (2001) 25 Cal.4th 98, 104 [104 Cal.Rptr.2d 753, 18 P.3d 674].)

Our Supreme Court has recently summarized case law construing the "separate occasions" requirement of section 667.6, subdivision (d) as follows: "Under the broad standard established by . . . section 667.6, subdivision (d), the Courts of Appeal have not required a break of any specific

duration or any change in physical location. Thus, the Court of Appeal herein cited *People v. Irvin* (199[6]) 43 Cal.App.4th 1063, 1071 [51 Cal.Rptr.2d 127], for the principle that a finding of 'separate occasions' under . . . section 667.6 does not require a change in location or an obvious break in the perpetrator's behavior: '[A] forcible violent sexual assault made up of varied types of sex acts committed over time against a victim, is not necessarily one sexual encounter.' Similarly, the Court of Appeal in *People v. Plaza* (1995) 41 Cal.App.4th 377, 385 [48 Cal.Rptr.2d 710], affirmed the trial court's finding that sexual assaults occurred on 'separate occasions' although all of the acts took place in the victim's apartment, with no break in the defendant's control over the victim. (But see *People v. Pena* (1992) 7 Cal.App.4th 1294, 1316 [9 Cal.Rptr.2d 550] [defendant's change of positions between different sexual acts was insufficient by itself to provide him with a reasonable opportunity to reflect upon his actions, 'especially where the change is accomplished within a matter of seconds']; *People v. Corona* (1988) 206 Cal.App.3d 13, 18 [253 Cal.Rptr. 327] [holding, after the respondent implicitly conceded the point, that the trial court erred in imposing consecutive sentences for different sexual acts when there was no cessation of sexually assaultive behavior 'between' acts].)" (*People v. Jones, supra,* 25 Cal.4th 98, 104-105.)

Once a trial judge has found under section 667.6, subdivision (d), that a defendant committed offenses on separate occasions, we may reverse only if no reasonable trier of fact could have decided the defendant had a reasonable opportunity for reflection after completing an offense before resuming his assaultive behavior. (*People v. Plaza, supra,* 41 Cal.App.4th 377, 384; *People v. Pena, supra,* 7 Cal.App.4th 1294, 1314.) Applying this deferential standard, we conclude the trial court here could reasonably have decided that counts 3, 7, and 15 (forcible oral copulation, rape, and forcible digital penetration) occurred on separate occasions. After defendant forced the victim to orally copulate him, he let go of her neck, ordered her to strip, punched her in the eye, put his gun to her head and threatened to shoot her, and stripped along with her. That sequence of events afforded him ample opportunity to reflect on his actions and stop his sexual assault, but he nevertheless resumed it. Thus, defendant's first act of rape was committed on a separate occasion from the forcible oral copulations. (*Plaza, supra,* 41 Cal.App.4th 377, 384-385.)

Similarly, defendant had an adequate opportunity to reflect upon his actions between the time he inserted his finger in the victim's vagina and the commission of the first rape. During this interval, defendant (1) began to play with the victim's chest; (2) put his gun on the back seat; (3) pulled the victim's legs around his shoulders and, finally, (4) forced his penis inside

her vagina. A reasonable trier of fact could have found the defendant had adequate opportunity for reflection between these sex acts and that the acts therefore occurred on separate occasions for purposes of application of section 667.6, subdivision (d). (*Plaza, supra,* 41 Cal.App.4th 377, 384-385.)

The trial court did not err in sentencing defendant.

## IX

As noted, the trial court imposed 10-year enhancements on counts 3, 7, and 15 under section 12022.53, subdivision (b). At the time of sentencing, that provision stated in part: "Notwithstanding any other provision of law, any person who is convicted of a felony specified in subdivision (a), and who in the commission of that felony personally used a firearm, shall be punished by a term of imprisonment of 10 years in the state prison, which shall be imposed in addition and consecutive to the punishment prescribed for that felony."[5]

However, in *People v. Moody* (2002) 96 Cal.App.4th 987 [117 Cal.Rptr.2d 527] (*Moody*), a case decided after trial and sentencing here, we held that where a defendant was convicted of attempted second degree robbery and was sentenced to a consecutive determinate term for that offense, with an enhancement under section 12022.53, subdivision (b), the trial court could not impose a full 10-year term for the enhancement. We explained that in a case involving principal and subordinate terms for the crime of attempted robbery section 1170.11 commanded that the preexisting enhancement sentencing limitation of section 1170.1 still applied. Section 1170.1 provides in pertinent part: "The subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed, *and shall include one-third of the term imposed for any specific enhancements applicable to those subordinate offenses.*" (§ 11701.1, italics added; see *Moody, supra,* 96 Cal.App.4th at pp. 990-993.) Thus, the trial court could lawfully impose only one-third of the enhancement term, or three years and four months, for any enhancement pursuant to section 12022.53, subdivision (b), on a consecutive determinate subordinate term imposed for attempted robbery.

We requested and received supplemental briefing from the parties on the question whether, in light of *Moody,* full consecutive terms could be

---

[5]This part of section 12022.53, subdivision (b) was subsequently amended. We give the current version below in a nonpublished portion of this opinion.

imposed for the firearm use enhancements on consecutive terms for counts 3, 7, and 15 in this case. For reasons that follow, we conclude that the crimes at issue, unlike the attempted robbery in *Moody*, are subject to the provisions of subdivision (h) of section 1170.1, which provides for full-term enhancements.

At the outset, we acknowledge the Attorney General is correct in his argument that, for purposes of application of section 1170.1, count 3 should be treated as a principal term, not a subordinate term subject to reduction. At oral argument, defendant conceded the Attorney General is correct on this point. The sentence on count 3 was run consecutive to the 25-year-to-life sentence imposed on count 2. However, the 25-year-to-life sentence is an indeterminate sentence. (*People v. Felix* (2000) 22 Cal.4th 651, 659 [94 Cal.Rptr.2d 54, 995 P.2d 186].) Section 1170.1, which requires reduction of consecutive terms to one-third, "fully applies only when all terms of imprisonment are 'determinate,' i.e., of specified duration. A life sentence is 'indeterminate,' i.e., not for a fixed period. When a defendant is sentenced to both a determinate and an indeterminate sentence, the determinate sentence is served first. Nonetheless, neither term is 'principal' [n]or 'subordinate.' *They are to be considered and calculated independently of one another*. [Citation.]" (*People v. Reyes* (1989) 212 Cal.App.3d 852, 856 [260 Cal.Rptr. 846], italics added; cited with approval in *People v. Felix, supra,* 22 Cal.4th 651, 658; see *People v. Lyons* (1999) 72 Cal.App.4th 1224, 1227-1229 [85 Cal.Rptr.2d 581].) Because the determinate term on count 3 was to be calculated independently of the indeterminate term imposed on count 2, the trial court correctly imposed the full 10-year enhancement on count 3.

With respect to counts 7 and 15, we have concluded sentence on those counts was properly imposed pursuant to section 1170.1, subdivision (h).

In *People v. Fitch* (1985) 171 Cal.App.3d 211 [217 Cal.Rptr. 197], this court considered whether separate two-year enhancements for use of a firearm were properly imposed on four consecutive counts of forcible oral copulation (§ 288a, subd. (c)). We concluded that the four separate enhancements were authorized by former section 1170.1, subdivision (i), which then provided: " 'For any violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or sodomy or oral copulation by force, violence, duress, menace or threat of great bodily harm as provided in Section 286 or 288a, the number of enhancements which may be imposed shall not be limited, regardless of whether such enhancements are pursuant to this or some other section of law. Each of such enhancements shall be a full and separately served enhancement and shall

not be merged with any term or with any other enhancement.'" (*People v. Fitch, supra,* 171 Cal.App.3d at p. 214, fn. 2.)

In reaching this conclusion in *Fitch,* we said, "Subdivision (d) of section 667.6 is obviously not an alternative sentencing scheme to that in section 1170.1. Rather, it is mandatorily applicable to cases within its terms, supplanting to that extent the generally applicable consecutive sentencing scheme of section 1170.1. However, . . . the Legislature did not make subdivision (d) mutually exclusive with the totality of section 1170.1. Thus to the extent they are not inconsistent with subdivision (d), the provisions of section 1170.1 apply to cases within subdivision (d)." (*People v. Fitch, supra,* 171 Cal.App.3d 211, 214.) We continue to subscribe to this analysis.

The substance of former section 1170.1, subdivision (i), which we construed in *Fitch,* is now found in section 1170.1, subdivision (h), which provides as follows: "For any violation of an offense specified in Section 667.6, the number of enhancements that may be imposed shall not be limited, regardless of whether the enhancements are pursuant to this section, Section 667.6, or some other provision of law. *Each of the enhancements shall be a full* and separately served *term.*" (Italics added.)

In the instant case, counts 7 and 15 are convictions for violation of, respectively, sections 261, subdivision (a)(2) and 289, subdivision (a)(1). Both of these offenses are "specified in section 667.6" as section 1170.1, subdivision (h) requires.[6] That subdivision unambiguously mandates that each of the firearm enhancements be a full term. Although we did not consider in *Fitch* whether each of the separate firearm use enhancements had to be a full term, in fact each two-year enhancement term was a full term under the version of section 12022.5 in effect when defendant committed his crimes. (See Stats. 1977, ch. 165, § 92, p. 678.)

We conclude the trial court properly imposed separate full-term enhancements on counts 3, 7, and 15.

X*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

[6]Section 667.6 provides in pertinent part: "(a) Any person who is found guilty of violating paragraph (2) . . . of subdivision (a) of Section 261, . . . or subdivision (a) of Section 289, . . . who has been convicted previously of any of those offenses shall receive a five-year enhancement for each of those prior convictions provided that no enhancement shall be imposed under this subdivision for any conviction occurring prior to a period of 10 years in which the person remained free of both prison custody and the commission of an offense which results in a felony conviction."

*See footnote, *ante,* page 1081.

## DISPOSITION

The judgment is modified by imposing a 10-year firearm use enhancement, which shall be consecutive, on count 2, so that defendant's sentence is a determinate sentence of 64 years eight months, followed by a consecutive indeterminate life sentence with parole eligibility after a minimum of 25 years. As modified, the judgment is affirmed. The trial court shall prepare an amended abstract of judgment reflecting this modification and shall forward a certified copy of the same to the Department of Corrections.

Davis, J., and Morrison, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 25, 2003. George, C. J., did not participate therein.