Filed 2/27/15  P. v. Green CA2/3
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>COREY D. GREEN,<br><br>    Defendant and Appellant. | B254805<br><br>(Los Angeles County<br>Super. Ct. No. MA057061)<br><br>ORDER MODIFYING OPINION<br><br>[CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on February 19, 2015, be modified as follows:

1.      On page 1, first paragraph, second sentence, insert after "Affirmed," the words "with directions."

2.      On page 2, second paragraph, second sentence, insert after "judgment," the words "with directions to amend the abstract judgment to accurately reflect the sentencing."

3.      On page 9, insert the following new paragraph after line 2:

"The Attorney General correctly notes that the abstract of judgment does not accurately reflect the sentence imposed by the trial court in that it fails to show that:

(1) the court imposed consecutive terms on counts 2 and 3; (2) the terms of 25 years to life imposed on counts 1, 2, and 3 were imposed pursuant to section 667.61; (3) the terms of 25 years to life imposed on counts 1, 2, and 3 were doubled to 50 years to life pursuant to section 1170.12; and (4) the court imposed a consecutive 5-year enhancement on count 3 pursuant to section 667, subdivision (a)(1). This court has the authority to correct clerical errors in an abstract of judgment. (*People v. Mitchell* (2001) 26 Cal.4th 181, 186-187.) We therefore will direct the trial court to amend the abstract of judgment to reflect the sentence in these regards."

4. On page 9, insert after the first sentence in the Disposition: "The trial court is directed to prepare an amended abstract of judgment as stated in this opinion and forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation."

[This modification changes the judgment.]

2

Filed 2/19/15  P. v. Green CA2/3 (unmodified version)
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>COREY D. GREEN,<br><br>    Defendant and Appellant. | B254805<br><br>(Los Angeles County<br>Super. Ct. No. MA057061) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Eric P. Harmon, Judge.  Affirmed.

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Russell A. Lehman, Deputy Attorney General, for Plaintiff and Respondent.

A jury convicted defendant Corey D. Green of one count of forcible oral copulation (Pen. Code, § 288a, subd. (c)(2)(A))[1] and two counts of forcible sexual penetration by a foreign object (§ 289, subd. (a)(1)(A)). It also found pursuant to section 667.61, subdivisions (a) and (d) and section 667.71 that defendant had suffered a prior conviction of rape (§ 261, subd. (a)(2)). The trial court found true allegations that defendant had suffered a prior conviction for failure to register as a sex offender (§ 290) and had served a prior prison term (§ 667.5, subd. (b)). The court determined that each of the three present crimes of which defendant was convicted occurred on a separate occasion and sentenced him to three consecutive terms of 50 years to life, plus additional time on the enhancements, for an aggregate term of 166 years to life.

Defendant contends the evidence does not support the trial court's finding that each act against the same victim occurred on a separate occasion. We disagree and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Factual Background*

After her car broke down, M. had it towed to the back corner of a parking lot behind an AutoZone store in Palmdale in the early afternoon of July 11, 2012. She determined that it needed a new alternator. M. was experienced in car repair, had her own tools and a jack, and decided to replace the alternator herself. She entered the store, found the price of a new alternator, and returned to the car to jack it up. M. then laid out her tools beside the car and began working on her car.

M. suffered from fibromyalgia and experienced pain in her spine and intestines. She had taken hydrocodone and other medications shortly before the incident and felt drowsy as a result. M. was 5 feet, 2 inches tall and weighed 105 to 110 pounds. She had been living in her car for a week, and many of her possessions were in her car. Her children were staying with her parents.

---

[1] All statutory references are to the Penal Code unless stated otherwise.

Defendant approached M. as she was standing over the engine compartment unscrewing a bolt. He asked her what she was doing. M. did not know defendant and had never seen him before. She told him that she was replacing the alternator so she could return to her children. Defendant asked if she needed help. M. stated that she did not. Defendant grabbed the tool from her hand and said that he used to work as an auto mechanic and could help. He appeared to be working on the car for a couple of minutes as M. sat down by her tools. Defendant then approached her by the tools and began talking to her. He pulled out a wad of money and offered to pay her for sex. M. declined and returned to the front of her car with a tool in her hand. Defendant followed her, grabbed the tool from her hand, and resumed working on the alternator.

M. returned to the side of the car to get another tool. Defendant approached her from behind. He placed one arm across her chest and the other on her lower abdomen, reached inside the front of her pants, and forcefully inserted a finger inside her vagina. M. pushed defendant away and told him to stop. She was frightened and believed that there was nowhere to run. Defendant grabbed her arm and held it tight. He appeared angry and agitated. A store employee then walked out of the store. Defendant released M.'s arm, walked to the front of the car, and pretended to work on the car. The employee got into a car and drove away. M. walked to the front passenger side of the car.

Defendant then approached M. again, grabbed her and forced her down to her knees near the driver's side front fender. She protested as defendant pulled out his penis, held her head, and shoved his penis into her mouth. M. soon managed to pull her head away. She was distraught, confused, frightened, and crying. She walked to the front of the car.

Defendant approached her again and stood with her by the front of the car as another store employee walked out of the store to make a delivery. M. told defendant that she just wanted to repair her car so she could get out of there and go home to her children. She walked to the driver's side of the car. Defendant opened the driver's side rear passenger door, removed some items from the back seat, and threw M. onto her

3

stomach on the back seat of the car. He pulled off her pants and panties and told her to spread her vagina for his penis. She heard sounds that suggested to her that he was photographing her and told him not to take pictures. He denied doing so. Defendant then forcefully inserted his fingers into her vagina. He suddenly stopped, jumped up, slammed the car door against her legs, and told her to hurry up and get dressed. He walked over to the tools.

M. slowly put her panties and pants back on and got out of the car. Seeing a female store employee walking out of the store, M. walked to the front of the car on the passenger side and mouthed "help me" to the employee. M. was crying. The employee nodded at M. and then got into the car and drove away. The employee returned to the store five to eight minutes later after making a delivery and told her coworkers what she had seen. Two of her coworkers then left the store, approached defendant and M., and asked what was happening. M. appeared uncomfortable, and defendant grabbed her wrist. One of the employees told defendant that they were calling the police. Defendant walked away and was arrested nearby.[2]

Defendant was 6 feet, 1 or 2 inches tall at the time of his arrest and weighed 200 to 210 pounds. He was carrying a large amount of cash and a cellular phone with video recordings of part of the incident.

2. *Trial Court Proceedings*

A jury convicted defendant of one count of forcible oral copulation (§ 288a, subd. (c)(2)(A)) (count 1) and two counts of forcible sexual penetration by a foreign object (§ 289, subd.(a)(1)(A)) (counts 2 & 3). It also found pursuant to section 667.61, subdivisions (a) and (d) and section 667.71 that defendant had suffered a prior rape conviction (§ 261, subd. (a)(2).) The trial court found true allegations that defendant

---

**2**    Sometime after defendant first approached M. and before he departed, a man who had borrowed jumper cables from M. returned them to her. Defendant spoke with the man and prevented M. from doing so by forcefully placing his hand on her shoulder and squeezing her shoulder.

had suffered a prior conviction for failure to register as a sex offender (§ 290) and had served a prior prison term (§ 667.5, subd. (b)).

The trial court requested briefing on whether the three present crimes were committed on the same or separate occasions under section 667.6, subdivision (d) and whether consecutive terms should be imposed. After considering the briefs, the court found that the three crimes "involve the same victim on separate occasions" within the meaning of section 667.6, subdivision (d) and that consecutive terms were appropriate. The court explained:

"The prolonged time period, separate types of crimes, the fact that he stopped perpetrating the crimes when an employee or customer walked out, that he interacted with people and created subterfuge and resumed perpetration of the crimes, they took place at different locations, both inside and outside of a car and that he took enough reflection and enough time to make a video recording [of] one of the sex acts."

The trial court sentenced defendant on count 1 to 25 years to life, doubled to 50 years to life pursuant to the Three Strikes law (§ 1170.12, subds. (a)–(d)), plus a consecutive 5-year enhancement under section 667, subdivision (a)(1) and a consecutive 1-year enhancement under section 667.5, subdivision (b). The court sentenced him on count 2 to a consecutive term of 25 years to life, doubled to 50 years to life pursuant to the Three Strikes law, plus a consecutive 5-year enhancement under section 667, subdivision(a)(1). The court sentenced him on count 3 to a consecutive term of 25 years to life, doubled to 50 years to life pursuant to the Three Strikes law, plus a consecutive 5-year enhancement pursuant to section 667, subdivision(a)(1). Thus, defendant was sentenced to an aggregate term of 166 years to life.

### *CONTENTION*

Defendant contends the evidence does not support the finding that each act against the same victim occurred on a separate occasion and therefore does not support the imposition of consecutive terms.

5

Section 667.6, subdivision (d) states that a court must impose a consecutive term for certain sex crimes if the crimes involve separate victims or the same victim on separate occasions. Section 667.6, subdivision (d) states further:

"In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions."

The determination whether crimes against the same victim occurred on separate occasions under this provision ordinarily depends on whether the defendant had a reasonable opportunity to reflect on his or her actions after one crime and before another. (*People v. Solis* (2012) 206 Cal.App.4th 1210, 1220; *People v. Garza* (2003) 107 Cal.App.4th 1081, 1092-1093.) A finding that the crimes occurred on separate occasions does not require a break of any specific duration, a change in physical location, or an obvious break in the defendant's behavior. (*People v. Jones* (2001) 25 Cal.4th 98, 104; *People v. King* (2010) 183 Cal.App.4th 1281, 1325.)

A reviewing court will defer to the trial court's determination that crimes against the same victim occurred on separate occasions unless no reasonable trier of fact could have concluded that the defendant had a reasonable opportunity for reflection after one crime and before another. (*People v. King*, *supra*, 183 Cal.App.4th at p. 1325; *People v. Garza*, *supra*, 107 Cal.App.4th at p. 1092.)

Here, defendant's first act of forcible digital penetration occurred when M. was standing to the side of the car by the tools. Defendant stood behind M., put his arms around her, reached inside the front of her pants, and forcefully inserted his finger into her vagina. She pushed him away and protested. The forcible digital penetration ended at that time. Defendant was angry and agitated. He held her by the arm and released

6

her arm when a store employee walked out of the store. Defendant then stepped away from M., walked to the front of the car, and pretended to work on the car.

Defendant's act of forcible oral copulation occurred by the driver's side front fender after the store employee had driven away. Defendant forced M. down to her knees and put his penis into her mouth. The forcible oral copulation ended when M. pulled away from defendant. M. then walked to the front of the car. Defendant approached her again and stood with her while another store employee walked out of the store on a delivery run. M. told defendant that she just wanted to repair her car so she could go home to her children, and she walked to the driver's side of the car. Defendant then opened the rear passenger door on the driver's side, removed items from the back seat, and threw M. onto her stomach on the back seat. He pulled off her pants and panties and began making a video recording of her using his cell phone before forcefully inserting his fingers into her vagina.

Defendant's conduct after the first act of forcible digital penetration had ended and before the forcible oral copulation began suggests that he was aware of the wrongful nature of his conduct and the danger of being discovered and, therefore, had an opportunity to reflect on his actions. (See *People v. King*, *supra*, 183 Cal.App.4th at pp. 1325-1326.) He released M.'s arm, walked away from her, and pretended to work on the car when a store employee appeared. The change in location, the subterfuge of pretending to work on the car while the employee came and went, and the time elapsed between the two sex crimes all support the trial court's finding that defendant had a reasonable opportunity to reflect on his actions before resuming his attack.

Defendant's conduct after the forcible oral copulation had ended and before the second act of forcible digital penetration began also suggests that he was aware of the wrongful nature of his conduct and the danger of being discovered and had an opportunity to reflect on his actions. He followed M. to the front of the car and stood by her, refraining from sexually assaultive behavior while the store employee was present. M. told defendant that she just wanted to repair her car so she could go home to her children. During the lull in activity, defendant was able to prepare for his next sex

7

crime by removing items from the back seat of the car before throwing M. onto the back seat. (See *People v. Garza*, *supra*, 107 Cal.App.4th at pp. 1092-1093.) The change in location, the brief conversation, the pause while the employee came and went, the time elapsed between the two sex crimes, defendant's preparation for his next sex crime, and the fact that he had the presence of mind to record the second act of forcible digital penetration all support the trial court's finding that he had a reasonable opportunity to reflect on his actions before resuming his attack.

Contrary to defendant's argument, the evidence supports the trial court's finding that defendant stopped perpetrating the crimes when a store employee was present. The evidence shows that during the interim between the first act of forcible digital penetration and the forcible oral copulation, defendant refrained from his sexually assaultive behavior while a store employee came and went, as we have discussed. The evidence also shows that during the interim between the forcible oral copulation and the second act of forcible digital penetration, defendant again refrained from sexually assaultive behavior while another store employee came and went.

Defendant's challenge to the trial court's finding that defendant "interacted with people and created a subterfuge and resumed perpetration of the crimes" is not persuasive. M. testified at trial that defendant spoke with a man who was returning her jumper cables and prevented her from interacting with the man by forcefully squeezing her shoulder. This testimony suggests an effort to create a false appearance of normalcy so as to avoid detection. To the extent the evidence does not support the court's finding that defendant interacted with more than one person in this manner before resuming his perpetration of crimes, any misstatement in this regard does not show that the court applied an improper legal standard or misapplied the law, and does not otherwise undermine the court's finding that the crimes occurred on separate occasions.

We conclude that the trial court correctly found as to each successive act that defendant had a reasonable opportunity to reflect on his actions and nevertheless resumed his sexually assaultive behavior. The evidence therefore supports its

8

determination that the acts occurred on separate occasions within the meaning of section 667.6, subdivision (d) and the imposition of consecutive sentences was proper.[3]

### DISPOSITION

The judgment is affirmed.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

LAVIN, J.[*]

WE CONCUR:

EDMON, P. J.

ALDRICH, J.

---

[3]     In light of our conclusion, we need not decide whether defendant forfeited his challenge to the trial court's sentencing decision by failing to assert in the trial court.

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.