Filed 8/26/15  P. v. Dudkiewicz CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B260424 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA089620) |
| v. | |
| PIOTR IGOR DUDKIEWICZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michael D. Carter, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury found defendant Piotr Dudkiewicz guilty on several counts of sex-related violent crimes against a single victim. On appeal, defendant contends the trial court erred in sentencing him to consecutive terms on four of the counts. We find no error and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2013, Guadalupe V. was advertising her services as an escort on the website "Backpage." Defendant responded to the advertisement. The two met on April 28, around 2:00 or 3:00 A.M. Defendant took Guadalupe to an apartment in Pasadena. He asked her to wear a motorcycle helmet and pose for photographs. Then, without warning or permission, defendant used a tube to pipe Freon into the helmet while it was still fastened on Guadalupe's head. She screamed for help, got the helmet off, and ran for the door. Defendant covered her mouth and grabbed her. They fell to the floor. Defendant tried to put the tube spewing Freon into Guadalupe's mouth. She screamed, tried to push defendant off, and tried to cover her mouth. She felt the Freon on her neck and chest. Eventually she was unable to move. Defendant said, "Oh, you were a tough one." He used duct tape to cover her mouth and fasten her hands behind her back, then took her to a bed. Unbeknownst to Guadalupe, defendant gave her three injections of ketamine. She began to drift in and out of consciousness. When she woke up, defendant was orally copulating her. She was so weak she only managed to touch defendant's hair in an attempt to push him away. She testified she did not say anything, but "if anything, [she] was complaining, like whining . . . ." She lost consciousness again.

When Guadalupe next came to, she vomited. Defendant complained about the mess. Guadalupe's vision was blurry. At some point she got out of the room and entered a hallway. She fell and lost consciousness. When she next regained consciousness, she asked defendant for her phone. Defendant complied, but he had removed the phone's SIM card, which prevented Guadalupe from calling a friend. Shortly before 9:00 A.M., she managed to call 911 while in the bathroom. Defendant forced open the locked bathroom door and took the phone apart. He eventually helped her get dressed and drove her to meet a friend.

2

Guadalupe suffered extensive second- and third-degree chemical burns on her face, chest, and hands.

*Defendant's statement to police*

In a recorded statement and interview, defendant told police about the incident, including the red motorcycle helmet he prepared for inhaling Freon, the ketamine injections, and his use of duct tape to bind Guadalupe's wrists and cover her mouth. Defendant put the Freon tank and helmet in the garage, then he straightened up the apartment and cleaned. He told police Guadalupe slept after he injected her with ketamine. Defendant spray painted the helmet black.[1] He returned to the bedroom, got on the bed next to Guadalupe, and stroked her hair. Guadalupe grabbed his hair and asked, "Why did you do this?" Defendant kissed her breasts, then began orally copulating her. He told police he put Vaseline on his fingers and inserted them into her anus. He recounted: "Still . . . kissing her, but that—that doesn't . . . last long 'cause, you know . . . I think I like . . . maybe attempted to have sex with her, but . . . nothing really happened. . . ." Defendant said Guadalupe wanted to have sex, but then asked if he had a condom. When he said no, she told him he needed to have a condom, and "everything stopped." When a detective asked directly, defendant said he thought he twice stuck his penis in Guadalupe's vagina. He also admitted he attempted anal sex with her. Defendant described the encounter as lasting approximately 10 minutes.[2] He also admitted Guadalupe repeatedly tried to use her phone, but he removed the SIM card and stopped her.

---

[1] Police recovered the motorcycle helmet and Freon tank when searching defendant's garage. They also found either the original or a photocopy of Guadalupe's identification card.

[2] When asked about the length of time, defendant answered: "I don't know. . . . I was actually kissing her down . . . kissing her, like, for quite a while, maybe like – for quite a while meaning, like, maybe for 10 minutes . . . in total. And out of those 10 minutes, maybe half of the time . . . I spent licking her vagina and playing with her ass, you know."

3

The jury found defendant guilty of the following crimes: simple assault (Pen. Code § 240; lesser of count 1);[3] simple battery (§ 242; lesser of count 1); mayhem (§ 203; count 2); false imprisonment by violence (§ 236; count 3); oral copulation of an unconscious person (§ 288a, subd. (f); count 4); oral copulation by anesthesia or controlled substance (§ 288a, subd. (i); count 5); attempted sodomy of an unconscious victim (§§ 286, subd. (f), 664; count 6); attempted sodomy by anesthesia or controlled substance (§§ 286, subd. (i), 664; count 7); sexual penetration by foreign object of an unconscious victim (§ 289, subd. (d); count 8); sexual penetration by foreign object when victim is prevented from resisting by anesthesia or controlled substance (§ 289, subd. (e); count 9); rape of an unconscious person (§ 261, subd. (a)(4); count 10); rape by use of drugs (§ 261, subd. (a)(3); count 11); forcible oral copulation (§ 288, subd. (c)(2)(A); count 12); and forcible rape (§ 261, subd. (a)(2); count 13).

As to counts 2 and 3, the jury found true the allegation that defendant personally inflicted great bodily injury upon Guadalupe, within the meaning of section 12022.7, subdivision (a). On counts 12 and 13, the jury found true allegations that in the commission of both crimes, defendant engaged in tying or binding of Guadalupe (§ 667.61, subds. (a) & (e)(5)); defendant administered a controlled substance to her (§ 667.61, subds. (a) & (e)(6)); and defendant inflicted great bodily injury (§ 667.61, subds. (a) & (d)(6)).

In the prosecution sentencing memo, the People argued the trial court had the discretion to sentence defendant to full consecutive terms on counts 12 and 13 pursuant to section 667.6, subdivision (c).[4] At the sentencing hearing, the court asked the prosecutor to address why defendant should receive consecutive sentences on counts 12 and 13.

---

[3]     All further statutory references are to the Penal Code. The jury found defendant not guilty of torture (§ 206; count 1).

[4]     Section 667.6, subdivision (c) provides in relevant part: "In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of an offense specified in subdivision (e) if the crimes involve the same victim on the same occasion."

The prosecutor argued the court had discretion to "find sex acts against the same person in the same instance as force. The court is given discretion to find them consecutive and sentence them consecutively . . . every separate act of a sexual crime in this case is a new and distinct violation." The prosecutor further argued defendant could have "stopped what he was doing and lessened the damage" at any point. The prosecutor continued: "And I think that it is bad enough that she was orally copulated after the force happened and after being drugged, but to additionally rape her, your honor, requires a full consecutive sentence. And in this case because of the way in which he did it with a tying and the binding, that means a full consecutive sentence of 15 years to life for each separate count. I don't see a mitigating point that would warrant anything less than that."

Before announcing a sentence on any of the counts, the court described some of the factors upon which the sentence was to be based. The court indicated the injuries and pain the victim suffered were horrific and the crimes involved drugging, tying, and binding. The court also explained the defendant's actions did not take place in a "single moment." Instead, the actions took place between 3:00 A.M. and 8:50 A.M. The court indicated this was a "long time period," and there was "a lot of time for decisions to be made." The court stated it believed the series of sexual acts were separate acts and should be addressed separately because defendant had the time to appreciate what he was doing and to stop.

The court sentenced defendant to a total prison term of 40 years and 8 months to life, comprised of the following. Count two (mayhem) was deemed the base count; the trial court imposed the mid-term of four years, plus three years for the great bodily injury enhancement, for a total of seven years. The court imposed a consecutive sentence on count 3 (non-sexual assault) of one-third of the mid-term, totaling eight months. The court concluded counts 4 and 5 (oral copulation) merged with count 12, and imposed no additional time. On count 6 (attempted sodomy of unconscious person), the court concluded the crime was not deemed a forcible sexual act. The court thus stated: ". . . sentence under the normal sentencing scheme and the defendant will receive one-third mid which is an additional year in state prison." On count 7 (attempted sodomy by

5

use of drugs), the court imposed no additional time pursuant to section 654. On count 8 (sexual penetration by foreign object of unconscious person), the court concluded the crime was not a forceful sexual act, and imposed sentence "under the normal sentencing scheme" of one-third of the mid-term, totaling two years. On count 9 (sexual penetration by foreign object of unconscious person with use of anesthesia or controlled substance), the court imposed no additional time pursuant to section 654; the count was based on the same acts as count 8.

The court concluded counts 10 and 11 (rape of an unconscious person and rape by use of drugs) were based on the same conduct as count 13 and imposed no additional time. On counts 12 and 13 (forcible copulation and rape), the court explained:

"[T]he question is whether or not these are separate acts. And the court has already indicated the reasoning why the court believes that these are separate acts, the forceful oral copulation and the rape. Again, the defendant had the opportunity to stop the attacks and yet he chose to continue, and the jury found that both of these acts were forceful acts and the court agrees." Because the jury found defendant tied and bound the victim, the counts were each subject to a 15-to-life indeterminate sentence pursuant to section 667.61, subdivision (e)(3). The court ordered the sentences to be run consecutive to each other.

Defendant timely appealed.

## DISCUSSION

### I. Mandatory Consecutive Sentencing Was Proper Under Section 667.6, Subdivision (d) for Counts 12 and 13

On appeal, defendant contends the trial court erred in imposing consecutive sentences on counts 6, 8, 12 and 13, pursuant to section 667.6, subdivision (d). We disagree.

Section 667.6, subdivision (d) provides: "A full, separate, and consecutive term shall be imposed for each violation of an offense specified in subdivision (e) if the crimes involve separate victims or involve the same victim on separate occasions. [¶] In determining whether crimes against a single victim were committed on separate

6

occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions."

Section 667.6, subdivision (e) specifies the following crimes: (1) Rape, in violation of section 261, subdivision (a), paragraph (2), (3), (6), or (7). (2) Spousal rape, in violation of section 262, subdivision (a), paragraph (1), (4), or (5). (3) Rape, spousal rape, or sexual penetration, in concert, in violation of section 264.1. (4) Sodomy, in violation of section 286, subdivision (c), paragraph (2) or (3); subdivision (d); or subdivision (k). (5) Lewd or lascivious act, in violation of section 288, subdivision (b). (6) Continuous sexual abuse of a child, in violation of Section 288.5. (7) Oral copulation, in violation of section 288a, subdivision (c), paragraph (2) or (3); subdivision (d); or subdivision (k). (8) Sexual penetration, in violation of section 289, subdivision (a) or (g). (9) Assault with intent to commit a specified sexual offense, in violation of section 220.

## A. Counts 6 and 8

Count 6 charged a violation of sections 286, subdivision (f), and 664; count 8 charged a violation of section 289, subdivision (d). Neither is a crime enumerated under section 667.6, subdivision (e). The trial court could not, and did not, impose a sentence on either count under section 667.6, subdivision (d). Instead, the court explicitly stated it was imposing sentence under the "normal sentencing scheme." We reject defendant's argument that the court improperly imposed full term consecutive sentences on counts 6 and 8 under section 667.6, subdivision (d).

## B. Counts 12 and 13

However, the court appeared to invoke the provisions of section 667.6, subdivision (d), when imposing sentencing on counts 12 and 13. We must therefore consider whether the court erred.[5] "Once a trial judge has found under section 667.6, subdivision (d), that a defendant committed offenses on separate occasions, we may reverse only if no reasonable trier of fact could have decided the defendant had a reasonable opportunity for reflection after completing an offense before resuming his assaultive behavior." (*People v. Garza* (2003) 107 Cal.App.4th 1081, 1092 (*Garza*).)

As summarized in *People v. Jones* (2001) 25 Cal.4th 98, 104, superseded by statute on another ground as stated in *People v. Andrade* (2015) 283 Cal.App.4th 1274, courts "have not required a break of any specific duration or any change in physical location," or any "obvious break" in the defendant's conduct, to establish "separate occasions" within the meaning of section 667.6, subdivision (d). Instead, the issue as set forth in the statute is whether "the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior." (§ 667.6, subd. (d); *People v. Solis* (2012) 206 Cal.App.4th 1210, 1216-1220.)

---

[5]     On appeal, the People contend the court imposed discretionary consecutive sentences pursuant to section 667.6, subdivision (c), rather than mandatory consecutive sentences under section 667.6, subdivision (d). The record does not support this contention. As the People point out, the prosecutor argued for consecutive terms under section 667.6, subdivision (c), and the court did not explicitly cite section 667.6, subdivision (d). Yet, with respect to counts 12 and 13, the court only referred to "separate acts," when discussing its sentencing choice; indeed, the court stated that as to those two counts, "the question is whether or not these are separate acts." The minute order from the sentencing hearing indicated: "The court finds that the defendant had sufficient opportunity and time to reflect on the nature of his acts and appreciate their effect on the victim. The court therefore finds that the crimes charged in count 12 and 13 were separate acts." The court's focus on "separate acts" and defendant's "opportunity to reflect" is quite clearly an invocation of section 667.6, subdivision (d), rather than subdivision (c).

8

Thus, in *Garza*, the appellate court affirmed the trial court finding of separate occasions where, between an act of forcible oral copulation and rape, the defendant released the victim's neck, ordered her to strip, punched her in the eye, put his gun to her head, threatened to shoot her, and removed his own clothes. (*Garza, supra,* at p. 1092.) The court also concluded the defendant had an adequate opportunity to reflect upon his actions when, between an act of digital penetration and rape, the defendant played with the victim's chest, put his gun down, pulled the victim's legs around his shoulders, and began forcible intercourse with her. (*Id.* at pp. 1092-1093.) Although the sex acts occurred in one location and without much break between acts, the court reasoned the "sequence of events afforded [the defendant] ample opportunity to reflect on his actions and stop his sexual assault, but he nevertheless resumed it." (*Id.* at p. 1092.)

Similarly, in *People v. King* (2010) 183 Cal.App.4th 1281, the court affirmed a separate occasion finding in a case involving a school district police officer's sexual assault of the victim during a purported traffic stop. (*Id.* at pp. 1286-1287.) The defendant received consecutive sentences for crimes completed within a two-minute period. (*Id.* at p. 1324.) Despite the brief period of time, the evidence supported a finding of separate occasions. After a first act of digital penetration, the defendant saw lights and a car driving past, at which point he paused, looked around uneasily, then used his other hand to again digitally penetrate the victim. This was a sufficient basis for a reasonable trier of fact to conclude the defendant had a reasonable opportunity for reflection after completing one offense before resuming his assaultive behavior.

And as explained in *People v. Irvin* (1996) 43 Cal.App.4th 1063 (*Irvin*), unlike a consensual sex act, "a forcible violent sexual assault made up of varied types of sex acts committed over time against a victim, is not necessarily one sexual encounter. Such a sexual assault consisting of multiple types of sex acts committed against the victim is not motivated by sexual pleasure. Instead, it is frequently intended to degrade the victim. . . . Therefore, at sentencing a trial court could find a defendant had a 'reasonable opportunity to reflect upon his or her actions' even though the parties never changed physical

9

locations and the parties 'merely' changed positions." (*Irvin*, at p. 1071; see also *People v. Plaza* (1995) 41 Cal.App.4th 377, 384-385.)

In this case, the evidence regarding counts 12 and 13 was minimal. Guadalupe recalled only that defendant orally copulated her. She offered no testimony regarding the rape. However, from defendant's description of the sequence of events, combined with Guadalupe's testimony, a reasonable trier of fact could have decided defendant had a reasonable opportunity for reflection between the forcible oral copulation and the rape. The evidence established Guadalupe was drifting in and out of consciousness, but she awoke to find defendant orally copulating her. She was too weak to do more than try to push him and whine. The evidence could reasonably be interpreted as establishing that between the oral copulation and the rape: (1) defendant put Vaseline on his fingers; (2) he digitally penetrated Guadalupe; (3) she whined and weakly pushed him; (4) she lost consciousness; and (5) defendant moved his body or Guadalupe's in such a way that he was able to force his penis into her vagina.

Defendant asserts this evidence failed to establish there was any "appreciable interval" between sex acts, or any meaningful opportunity for defendant to stop his assaultive behavior. We disagree. While the timing of the acts was not conclusively established, the evidence indicated that not only did defendant change position and move from oral copulation to execute the rape, during that interval Guadalupe made noise, she pushed or touched the defendant, and she blacked out. A trier of fact could infer that defendant must have observed this change, and it provided defendant a meaningful opportunity to reflect upon his actions. Moreover, defendant's own description of the events suggested a certain amount of hesitation before the rape, hesitation that would have afforded him an opportunity to reflect before resuming his sexually assaultive behavior.[6]

---

[6] The detective asked directly if defendant put his penis in Guadalupe's vagina. Defendant answered: "Yes. I – I think—I think—I think I did. But if I did, it was, like, literally, like twice. I – I would say, like literally, twice, you know." The detective later asked if defendant put his penis in Guadalupe's anus. Defendant answered: "Maybe. . . .

10

Indeed, the *Irvin* court's description of the difference between consensual sex acts and forcible violent sexual assault made up of varied types of sex acts is particularly apt here. When speaking to police, defendant tried to characterize the sex acts as part of a consensual encounter that took place in a continuous series of motions, at Guadalupe's urging. The other evidence told a very different story, including that Guadalupe was barely conscious, if at all. Further, throughout the incident, defendant acted deliberately and methodically, engaging in such actions as having the helmet specially prepared for inhaling Freon, tying and binding Guadalupe, drugging her, spray painting the helmet to change its color, cleaning the apartment, removing the SIM card from Guadalupe's phone, and taking her I.D.

When considering the totality of the evidence regarding the encounter, a reasonable trier of fact could infer that what occurred between the oral copulation and the rape—Guadalupe's protests, in contrast with her drug-induced silence; defendant's change in position to move from oral copulation to rape; and his self-described caution or hesitation in effectuating the rape—illustrated that in that period defendant had a reasonable opportunity to reflect upon his actions.[7] On this record, we have no basis to reject the trial court's finding that counts 12 and 13 reflected separate occasions for purposes of section 667.6, subdivision (d).

---

I don't remember, you know. I – I think I tried to stick it in both places, but I'm not . . . sure at this moment how successful I . . . was, you know, because it was kind of like hard to you say, you know. . . . I know I was trying, but . . . as long as it's kind of obvious to . . . tell if you are able to stick it . . . in a vagina, honestly, I'm not able to tell if I stick it . . . in her butt or not."

[7] This case is thus different from *People v. Pena* (1992) 7 Cal.App.4th 1294, in which the defendant forced himself into the victim's house, immediately raped her in her living room, twisted her legs, and orally copulated her. (*Id.* at p. 1299.) There was no evidence in *Pena* that anything occurred between the rape and oral copulation besides defendant's movement of the victim's legs to effectuate the oral copulation. In contrast, here there was evidence from which a reasonable trier of fact could conclude defendant had a reasonable opportunity to reflect upon his actions before resuming sexually assaultive behavior.

**DISPOSITION**

The judgment is affirmed.

OHTA, J.[*]

We concur:

BIGELOW, P.J.

FLIER, J.

---

[*]　Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.