Filed 9/10/15  P. v. Jones CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C076049 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F04447) |
| v. | |
| MATTHEW STEVEN JONES, | |
| Defendant and Appellant. | |

While he was living in a residential facility for juvenile sex offenders, defendant Matthew Jones left the home late at night, broke into the home of 12-year-old G. Doe, woke her up, and engaged in lewd and lascivious acts.  Defendant's image was caught on surveillance cameras around G. Doe's home, and defendant was apprehended when the manager of his residential facility recognized his picture and called authorities.

Defendant volunteered to authorities that he had committed similar acts against a young boy (A. Doe) who lived in the area, and that he had entered four other homes for the same purpose, but had found no children.  Defendant was 18 at the time of these offenses.

1

Defendant also volunteered that he committed a similar offense several times against a boy in Stockton when defendant had been living at a residential facility in Stockton. Defendant was 15 when he committed those offenses.

Defendant was tried by the court. The court found him guilty of four counts of lewd and lascivious acts with a child under the age of 14 for the offenses defendant committed in Stockton when he was 15. The Court found defendant guilty of four counts of lewd and lascivious acts with a child under the age of 14 by force or violence and one count of lewd and lascivious acts with a child under the age of 14 (a lesser included offense to the forcible act) for the two children he violated when he was 18. The court also found defendant guilty of two counts of first degree burglary.

For the violations of Penal Code section 288, subdivision (b)(1)[1] (forcible lewd & lascivious acts against a child under the age of 14), the court found true the allegations pursuant to section 667.61, subdivision (j)(1) that the crimes were committed during the commission of a first degree residential burglary, and sentenced defendant to four consecutive terms of life in prison without the possibility of parole. For the four violations of section 288, subdivision (a) (lewd & lascivious acts against a child under the age of 14) that defendant committed when he was 15, the court found true the allegations pursuant to section 667.61, subdivision (j)(1) that the crimes were committed during the commission of a first degree residential burglary, and sentenced defendant to four consecutive terms of 25 years to life. For the violation of section 288, subdivision (a) that defendant committed when he was 18, the court sentenced defendant to a consecutive term of 15 years to life. For the two first degree burglary convictions, the court sentenced defendant to a determinate terms of seven years four months. Defendant thus received a

---

[1] Further statutory references to sections of an undesignated code are to the Penal Code.

2

sentence of seven years four months, plus 115 years-to-life, plus four terms of life without the possibility of parole.

Defendant argues the convictions for the offenses he committed when he was 15 must be reversed because there is insufficient evidence of the corpus delicti. He further argues he received ineffective assistance of counsel at sentencing because his trial counsel failed to argue the sentence was cruel and unusual, and because his counsel failed to object to the court's reason for imposing consecutive terms. He also argues certain corrections must be made to the abstract of judgment.

We shall remand for resentencing as to counts one through four, and we shall order the corrections to the abstract, but shall otherwise affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant was living in a residential facility for juvenile sex offenders on North Avenue in Sacramento County in August 2012. He was 18. On the morning of August 12, 2012, the Sacramento County Sheriff's Department issued a media release with video footage of an individual who had been breaking into homes and molesting children. The program director for the North Avenue residential facility saw the media release, recognized defendant, and contacted the sheriff's department.

Detectives went to the North Avenue residence, where they handcuffed defendant with the intention of taking him back to the office for an interview. Defendant indicated he wanted to talk immediately, so the deputies *Mirandized* him.[2] As they were driving to the office, defendant pointed out a house where he had molested a boy. It was the house of A. Doe.

At the office, the detectives gave defendant his *Miranda* rights again. Defendant admitted that on the previous Friday night around midnight he had climbed a ladder and

_____

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].

3

entered an open window in A. Doe's house with the purpose of finding "a kid to [sexually] offend." He knew A. Doe lived there, because he passed by the house every day. He found A. Doe's bedroom, touched A. Doe's leg under the blanket near his buttocks, woke him up, and forced him into the kitchen. He tried to touch A. Doe's penis three or four times, but A. Doe pushed him away. When A. Doe ran, defendant left through the window he had used to enter the house. Defendant went back to A. Doe's house the next night around midnight. The front door was open, but before he could go in, an adult came around the corner asking him what he wanted. Defendant ran away.

Defendant confessed that approximately a week earlier, he went out looking for a house with toys in the yard indicating a child lived there. He went in a house through an unlocked sliding glass door. He went into a bedroom where he thought a boy was sleeping. When he woke the child up and stuck his hand under her underwear, he realized the child was a girl. He preferred boys, but he decided to try to see if he could be aroused by a girl. He licked her and tried to have sex with her, but he was not aroused. The girl, G. Doe, told defendant she was 12 years old. Before leaving, defendant told her not to tell anyone what happened or he would kill her.

G. Doe's family had surveillance cameras around the outside of the house. When G. told her father someone came in her room and touched her sexually, he checked the security cameras. He gave the surveillance video with defendant's image on it to law enforcement, and the images on the video led to defendant's apprehension.

Defendant confessed to breaking into other houses. He said he went in the house next door to G. Doe's because he had seen boys there. He went in through an unlocked door. An adult male caught him and ran him out of the house. He also confessed to entering another home at night through an unlocked door. He went to a room that was a kid's room, but there were no kids in the room, and an adult got up to go to the bathroom, so he left. He entered yet another house through an unlocked door, but he got chased out by a dog before he could find any children. After being chased by the dog, he found

4

another house with an open window. He looked through the house, but there were no children.

Defendant then told the detectives about a boy he had violated when he was about 15 years old and living at a group home in Stockton, California. The first time had been around Christmas, because defendant remembered a Christmas tree. Defendant told the detectives he orally copulated the boy, fondled him, and simulated sex with him. The boy had slept in the lower bunk of a set of bunk beds. There was a child in the top bunk as well, but he never bothered that one. He estimated the boy was about three years old because he had been wearing a diaper. The boy never said anything to him. Defendant said he took the boy's diaper off. He took most of the boy's clothes off. He could not get the boy's shirt off, so he pulled his shirt up under his arms. The boy had some kind of tube on his stomach. He went to the boy's house five times over a period of about two months. He went in the front door because the front door was never locked. The detectives took defendant to Stockton so he could show them which houses he had entered to molest children. While they were outside the house of the boy with the diapers, the boy and his father came outside and defendant identified the boy as the one he had molested. The boy was obviously disabled.

S. Doe was the Stockton boy defendant recognized. S. Doe's parents testified at trial. S. Doe's father testified that S. Doe had Leigh's disease, a mitochondrial disorder in which the immune system attacks the motor control centers of the brain. In December 2009 through January 2010, S. Doe could move his head a little from side to side and occasionally lift an arm or leg, but had no coordinated movement and no fine motor control. He could not speak, could not feed himself, could not dress or undress himself, and could not move from one place to another. He was being fed through a gastric tube.

S. Doe's mother testified he slept in the bottom bunk bed, and his older sister slept in the top bunk. She testified that during December 2009 and January 2010 there were four mornings when his clothes were in disarray. Sometimes the diaper was all the way

off, sometimes it was only half off.  Sometime his pants were completely off on the floor, and sometimes they were down around his ankles.  His shirt was taken off one night.  She asked her daughter if she saw or heard anything, or knew why S. Doe's diaper was off, but the daughter did not notice anything.

DISCUSSION

I

Corpus Delicti

Defendant argues there was insufficient evidence of the corpus delicti of the crime of lewd and lascivious acts with a child under the age of 14 years to support his conviction in counts one through four, the crimes he committed against S. Doe.  We disagree.

The corpus delicti rule holds that the prosecution must prove:  (1) the fact of injury, loss, or harm, and (2) the existence of a criminal agency as its cause.  (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1168-1169.)  Furthermore, the prosecution may not satisfy this burden by relying exclusively on the extrajudicial statements of the defendant.  (*Id*. at p. 1169.)  The corpus delicti "must be established independently of the extrajudicial statements, confessions or admissions of the defendant."  (*People v. Towler* (1982) 31 Cal.3d 105, 115.)  "In every case, once the necessary quantum of independent evidence is present, the defendant's extrajudicial statements may then be considered for their full value to strengthen the case on all issues."  (*People v. Alvarez, supra,* at p. 1171.)  The rule is not mandated by statute or the Constitution, but has its roots in the common law.  (*Id*. at p. 1169.)

Only a slight or prima facie showing of the corpus delicti is necessary.  (*People v. Huynh* (2012) 212 Cal.App.4th 285, 301.)  The corpus delicti may be proved by circumstantial evidence and reasonably drawn inferences from such evidence.  (*People v. Mehaffey* (1948) 32 Cal.2d 535, 545.)  " '[T]he prosecution need not eliminate all inferences tending to show [no crime was committed].  Rather, the foundation may be

6

laid by the introduction of evidence which creates a reasonable inference [a crime was committed] even in the presence of an equally plausible noncriminal explanation of the event.' " (*People v. Martinez* (1994) 26 Cal.App.4th 1098, 1104, quoting *People v. Jacobson* (1965) 63 Cal.2d 319, 327.)

Counts one through four alleged defendant violated Penal Code section 288, subdivision (a). The relevant parts of that section provide that a person is guilty if he or she "willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child . . . ." The definition of a lewd or lascivious act is quite broad, such that even an innocuous touching may violate the law if done with lewd intent. (*People v. Lopez* (1998) 19 Cal.4th 282, 289.) The circumstantial evidence independent of defendant's confession was sufficient prima facie evidence that he violated section 288, subdivision (a).

S. Doe's parents testified that he was unable to move in a controlled fashion, and that he could not dress or undress himself. S. Doe's sister, who slept in the same room, denied that she had taken S. Doe's clothes off. The trial court could reasonably infer from the fact that S. Doe's mother discovered him four times in the morning with his clothes partially or completely off and his diapers partially or completely off, that an intruder had taken his clothes off. There would be no real reason for anyone to do this, other than to commit a lewd or lascivious act against S. Doe. Even if there was another plausible explanation for S. Doe's clothes to have been removed, there was enough evidence presented for a reasonable trier of fact to infer that an intruder removed S. Doe's clothes, and that he did it in order to perform a lewd or lascivious act. The fact that there might be an equally plausible noncriminal explanation for S. Doe's clothes to have been in disarray is immaterial to a finding of the corpus delicti. (See *People v. Martinez, supra*, 26 Cal.App.4th at p. 1104.)

7

## II
## Ineffective Assistance of Counsel

Defendant argues he received ineffective assistance of counsel at sentencing in several respects. Defendant's challenge to his sentence is focused on the four consecutive life without the possibility of parole (LWOP) terms for counts five, six, seven, and eleven, and the four twenty-five year to life sentences for counts one through four.

### A. LWOP for Counts Five, Six, Seven, and Eleven

Defendant received four consecutive LWOP sentences for three lewd or lascivious acts by force or violence (§ 288, subd. (b)(1)) against G. Doe and one lewd or lascivious act by force or violence (§ 288, subd. (b)(1)) against A. Doe. The sentences were mandated by section 667.61, subdivision (j)(1), which provides that the trial court "shall" impose the term if the crime was committed during the commission of a first degree burglary with the intent to commit a lewd or lascivious act. Defendant contends his trial counsel was deficient because he failed to argue the sentence was cruel and/or unusual under the state and federal Constitutions. Trial counsel was not deficient if such an argument had no merit. (*People v. Ochoa* (1998) 19 Cal.4th 353, 463.) We therefore turn to the merits of the argument.

"A defendant has a considerable burden to overcome when he challenges a penalty as cruel or unusual. The doctrine of separation of powers is firmly entrenched in the law of California and the court should not lightly encroach on matters which are uniquely in the domain of the Legislature." (*People v. Bestelmeyer* (1985) 166 Cal.App.3d 520, 529.)

In California, a punishment may be cruel or unusual if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424, fn. omitted.) Punishment is cruel and unusual under the Eighth Amendment if it involves the

8

"unnecessary and wanton infliction of pain" or if it is "grossly out of proportion to the severity of the crime."  (*Gregg v. Georgia* (1976) 428 U.S. 153, 173 [49 L.Ed.2d 859].)

Under the California and federal Constitutions, courts follow substantially the same three guidelines in measuring the relationship between the crime and the punishment:  (1) the nature of the offense and the offender, including his age, prior criminality, personal characteristics, and state of mind; (2) the comparison of the penalty with punishments in the same jurisdiction for different offenses that are more serious; and (3) the comparison of the penalty with the punishments for the same offense in other jurisdictions.  (*In re Lynch, supra*, 8 Cal.3d 410 at pp. 425-427; *People v. Dillon* (1983) 34 Cal.3d 441, 479; *Solem v. Helm* (1983) 463 U.S. 277, 290-291 [77 L.Ed.2d 637].)

Defendant makes no effort to compare his sentence with punishment for the same offense in other states or with more serious offenses in California, and since it is his burden to establish that the punishment is cruel and/or unusual, we take his silence as a concession that his sentence withstands constitutional challenge on those bases.  (*People v. Retanan* (2007) 154 Cal.App.4th 1219, 1231.)

Defendant cites several cases invalidating death and life without parole sentences for juvenile offenders.[3]  However, defendant was not a juvenile at the time of the offenses for which he received LWOP.  Defendant's only analysis of the offense and offender is a recognition that the crimes were "inexcusable and reprehensible," and an assertion that he was young and had a troubled upbringing.  Defendant attempts no explication of his troubled upbringing.  Although he was young, he was legally an adult.

---

[3]  *Roper v. Simmons* (2005) 543 U.S. 551 [161 L.Ed.2d 1] (Eighth Amendment prohibits execution of defendant under 18 at time of crime); *Graham v. Florida* (2010) 560 U.S. 48 [176 L.Ed.2d 825] (Eighth Amendment prohibits life without parole for juvenile who did not commit homicide); *Miller v. Alabama* (2012) 567 U.S. ___ [183 L.Ed.2d 407] (mandatory life in prison without parole for defendant  under 18 at time of crime violates Eighth Amendment); *People v. Caballero* (2012) 55 Cal.4th 262 (Eighth Amendment prohibits 110-year-to-life sentence in juvenile for nonhomicide offense).

His argument is plainly insufficient to carry his burden of demonstrating that the punishment for the crimes committed when defendant was legally an adult was cruel and/or unusual. As there is no merit to the argument that the punishment was cruel and/or unusual, defense counsel was not ineffective for failing to make the argument below.

B. Consecutive Sentencing for Counts Five, Six, Seven, and Eleven

Defendant argues his trial counsel was also ineffective for failing to object to the bases for the court's decision to impose consecutive LWOP terms for counts five through seven. Counts five through seven were the charges involving G. Doe. The trial court stated that it selected consecutive sentencing because the defendant had a reasonable opportunity to reflect on his conduct in between the separate acts.

Subdivision (d) of section 667.6 provides for consecutive terms for each violation of section 288, subdivision (b) if the offenses "involve the same victim on separate occasions." "In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions." (§ 667.6, subd. (d).) A finding of separate occasions requires neither a break of any specific duration, nor any change in location. (*People v. Garza* (2003) 107 Cal.App.4th 1081, 1092.)

If the trial court finds the offenses were committed on separate occasions, "we may reverse only if no reasonable trier of fact could have decided the defendant had a reasonable opportunity for reflection after completing an offense before resuming his assaultive behavior." (*People v. Garza, supra*, 107 Cal.App.4th at p. 1092.)

Here, there was evidence defendant first felt G. Doe under her underwear. He then said to her, "You're a girl? . . . Oh, I thought you were something else." By

10

defendant's own admission he "tried to tell myself well I'll try to see if I like it." He then pulled down G. Doe's underwear and licked her vagina. After he licked her vagina, he asked her how old she was. He then got up from his crouching position by the bed, took all his clothes off, pulled G. Doe's underwear down, and rubbed his penis against her crotch.

Thus, between the three incidents, touching, licking, and rubbing, defendant had brief conversations with G. Doe. A reasonable trier of fact could have decided defendant had a reasonable opportunity for reflection during these brief exchanges before resuming his assaultive behavior. The consecutive sentences were thus proper, and defendant's trial counsel was not ineffective for failing to object.

Defendant argues his trial counsel was ineffective because he failed to object when the trial court used the threats to G. Doe as the basis of its decision to impose consecutive sentences, and argues that because the threats were incorporated as an element of the offenses for which he was convicted, i.e., *forcible* lewd acts, it was improper for the court to rely on that element of the offense as a reason for imposing consecutive terms. Defendant misreads the trial court's explanation of its sentencing choice. The trial court did not choose consecutive sentences because the acts on G. Doe were forcible acts. The court chose consecutive sentences "because I do find that the defendant had a reasonable opportunity to reflect on his conduct in between these separate acts." As detailed above, there was sufficient evidence to support this finding. Defendant's trial counsel was not ineffective for failing to assert a meritless objection

Counts ten and eleven were both violations of section 288, and were both offenses against A. Doe. Count ten alleged that defendant committed a lewd and lascivious act when he entered the victim's home through a window and touched the victim's leg near his buttocks while he was in bed. Count eleven alleged defendant forced A. Doe from his bedroom to the kitchen and attempted to touch Doe's penis.

11

Defendant argues the trial court wrongly believed a consecutive sentence was mandatory for count ten, when a consecutive term for count ten was discretionary, since it was a nonforcible offense. Defendant misreads the trial court's sentence. The trial court stated that it "selected" consecutive sentencing for counts ten and eleven "because the crime involved a separate victim than the victims of Counts One through Nine; and in these crimes, the defendant had a reasonable opportunity to reflect upon his actions, committing one act and then forcing the victim into a separate room to commit the second act. And during the commission of the second act, this victim continually resisted the efforts by the defendant to assault him. Thus, I find they were committed separately in different times and different places."

It is clear from the court's use of the term "selected" that it was aware of its discretion. Moreover, the trial court properly considered that the crimes were separate, and were committed at different times and separate places since defendant forced the victim into a separate room to commit the second act. (See Cal. Rules of Court, rule 4.425.) The trial court did not err, and defendant's trial counsel was not ineffective for failing to object.

C. Failure to Argue Mitigating Factors

Defendant argues his trial counsel was ineffective for failing to argue mitigating factors such as his background and mental and emotional development. We need not determine whether such failure rendered counsel's performance below an objective standard of reasonableness because we conclude defendant was not prejudiced.[4]

---

[4] " 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.' " (*In re Fields* (1990) 51 Cal.3d 1063, 1079.)

There is no statement in the record that the court did not consider the factors defendant now claims should have been considered. The trial court was aware of all the information in the probation report, and all the information presented at trial. Defendant himself addressed the court before sentencing, informing the court of his treatment history and asking for further treatment.

Nevertheless, after hearing the defendant's statement, the court told defendant: "While living in a treatment facility that was focused on helping you with the problems that you speak about today, you made choices. . . . [¶] You haven't fixed anything. And the fact that you think you have because you cooperated with law enforcement, leads me to believe that those are just empty words, that you haven't found the empathy that you say you have. [¶] . . . [¶] It's not anyone's fault but your own, sir, that you committed these crimes. Until you accept and believe that, no amount of counseling or programming will protect our community."

Given the court's statements, no argument of the mitigating factors defendant now puts forth would have resulted in a more lenient sentence.

D. Life Sentences for Counts One Through Four

Defendant argues his trial counsel was deficient for failing to argue that the aggregate sentence of 100 years to life imposed for counts one through four was unconstitutional. Defendant was 15 when he committed these acts, and a series of United States and California Supreme Court cases have held life sentences for juvenile offenders in nonhomicide offenses to be cruel and/or unusual punishment.[5] In particular, *People v. Cabellero, supra,* 55 Cal.4th at p. 268, held that "sentencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside the

---

[5] See footnote 3, *ante*.

13

juvenile offender's natural life expectancy constitutes cruel and unusual punishment in violation of the Eighth Amendment."

To show ineffective assistance of counsel, a defendant must establish that his trial counsel's performance was below an objective standard of reasonableness and that the deficient performance prejudiced the defendant. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.)

We must conclude that had defendant's trial counsel objected to the sentence for counts one through four, the trial court would have sentenced defendant to a sentence for those offenses that did not fall outside defendant's natural life expectancy, and that trial counsel's failure to object to the sentence fell below an objective standard of reasonableness. We will remand the case for resentencing on counts one through four.

### III
### Clerical Errors

Defendant notes a number of clerical errors in the abstract of judgment that need correcting. The People are in agreement.

The trial court did not orally impose a parole revocation fine pursuant to section 1202.45, yet one appears in the abstract. A parole revocation fine may not be imposed for a term of life in prison without the possibility of parole. (*People v. Jenkins* (2006) 140 Cal.App.4th 805, 819.) We will order this correction.

The abstract also lists the conviction for count ten as a violation of section 288, subdivision (b)(1), which was charged, even though the court found defendant was guilty of the lesser included offense of violating section 288, subdivision (a). We will order this corrected.

The abstract also incorrectly states that the offenses in counts one through four occurred between 2009 and 2014. In fact, these crimes occurred between 2009 and 2010. We will order the correction.

14

DISPOSITION

The sentence for counts one through four is vacated and the cause is remanded for resentencing on those counts. The trial court is directed to amend the abstract of judgment by striking the parole revocation fine, changing the violation for count ten to a violation of section 288, subdivision (a), and changing the date of the offense for counts one through four to 2009-2010. The trial court is further directed to forward the amended abstract to the Department of Rehabilitation and Correction. In all other respects, the judgment is affirmed as modified.

Pursuant to Business and Professions Code section 6086.7, subdivision (a)(2), the clerk of this court is ordered to forward a copy of this opinion to the State Bar upon finality of this appeal.[6] Further, pursuant to Business and Professions Code section 6086.7, subdivision (b), the clerk of this court shall notify defendant's trial counsel that the matter has been referred to the State Bar.


　　　　　　　　　　　　　　　　　　　　　　/s/　　　　　　　　　　　　
　　　　　　　　　　　　　　　　　　　　　　Blease, Acting P. J.

We concur:


　　　/s/　　　　　　　　　　　　
　　　Murray, J.


　　　/s/　　　　　　　　　　　　
　　　Renner, J.

---

[6] Business and Professions Code section 6086.7, subdivision (a)(2) requires the court to notify the State Bar "[w]henever a modification or reversal of a judgment in a judicial proceeding is based in whole or in part on the misconduct, incompetent representation, or willful misrepresentation of an attorney."

15